A marriage being about to occur between John H. Lee and Elizabeth Prosser, and she being entitled to a considerable estate, real and personal, by bequest from her father, the parties entered into articles under seal, bearing date the 5th day of December 1825, by which it was agreed between them, that all the estate, real and personal, to which the said Elizabeth was entitled should be secured to and settled upon her and her heirs. And Lee covenanted that all the said estate should remain in the possession of the said Elizabeth during the continuance of the intended marriage; and the annual proceeds thereof only should be applied to the maintenance of the said Lee and the said Elizabeth and their issue. And he further covenanted not to sell any part of the property except for the purpose of reinvestment or appropriation within the meaning of the articles. And it was further agreed that if Lee died in the lifetime of the said Elizabeth, leaving issue by her, any issue she might have by a subsequent marriage should share equally with his children in the property; and if there should be no issue of the marriage, and Mrs. Lee died in the lifetime of her husband, then the whole of the aforesaid estate, whether real or personal, should go to such persons as the said Elizabeth by her last will, or by any other instrument, properly attested, should appoint. This agreement was not admitted to record.
The marriage took place, and shortly thereafter, in January 1826, a bill was filed in the Chancery court at Richmond in the name of Lee and wife against Edmund W. Rootes, the executor of John Prosser, the father of Mrs. Lee, in which, after stating the provisions of the will of the father, they say they have applied to the executor to pay to them the female plaintiff's share of the property, but he declined to do it without the authority of the Court, because he doubted whether he could properly deliver to the complainants the property of the female complainant because of the articles of *Page 319 
agreement aforesaid. The articles were exhibited with the bill; and the question was submitted to the Court whether they created any obstacle to the transfer by the executor of the property to the complainants. They say it was not designed by the articles to interfere with the right of Lee to have possession during the marriage, and during his life, of all and every part of the property of the complainant Elizabeth.
The executor answered the bill, expressing his anxiety to deliver over the property in his possession belonging to Mrs. Lee to whomsoever the Court might appoint to receive the same, and give a legal discharge therefor. And when the cause came on to be finally heard on the 4th of February 1826, it was decreed that the plaintiffs should hold the real estate and slaves, and also the bank stocks and money transferred and paid to them by the executor, subject to the uses and stipulations of the marriage agreement.
John H. Lee died in July 1832, leaving Mrs. Lee and two children of the marriage surviving him; and John Tabb qualified as administrator upon his estate. In 1833 Mrs. Lee for herself, and as next friend of her two infant children, filed their bill in the Circuit court of Norfolk county against Tabb as the administrator of John H. Lee, in which she set out the execution of the marriage agreement and the suit against Rootes as executor of Prosser. She charged that Lee had with the proceeds of some of the trust property purchased certain slaves named, of which he died possessed; that he had sold too, fifty-four shares of bank stock for 5292 dollars; and held other moneys of the trust fund amounting together to 15,192 dollars. And she prayed that Tabb as the administrator of Lee might be restrained from setting up any title to the slaves purchased as aforesaid by Lee; and that they might be so disposed of as to satisfy all rights in them under the trust. And she asked that Lee's estate might be held *Page 320 
responsible for so much of the trust moneys as he had received and wasted.
Tabb answered the bill, admitting the facts stated in the bill, and submitting the case to the Court upon the law, for such a decree as should be consistent with his safety as administrator, and the rights of the parties.
The cause came on to be heard in June 1833, when the Court held that the marriage articles were valid in equity as between the parties thereto, and that the estate of John H. Lee was responsible for their violation by him; and the plaintiff being willing to take a decree against the estate of Lee in the hands of the administrator Tabb, without taking an administration account, the Court decreed that the administrator should convey to trustees named, the slaves mentioned in the bill, to be held by them as trustees for the purposes, objects and intents of the marriage articles; and that the administrator should, out of the assets of his intestate in his hands, pay to the same trustees the sum of 15,192 dollars, to be held or invested by them for the same objects, purposes and intents. Upon this decree Tabb transferred to the trustees the slaves mentioned therein; and paid to Mrs. Lee 442 dollars 13 cents, in part of the 15,192 dollars, which he as administrator of Lee was decreed to pay to her. And there seems to have been no further or other assets remaining in his hands.
At the time of John H. Lee's death Edmund P. Kennedy was his surety as endorser on a negotiable note for 1800 dollars discounted at the Bank of Virginia at Norfolk, for the accommodation of Lee. On this note the bank instituted an action at law against Kennedy, and recovered a judgment against him in November 1832; and in June 1833, Kennedy being taken in execution took the benefit of the act for the relief of insolvent debtors. Upon this proceeding there seems to have been made the sum of 277 dollars 84 cents, credited *Page 321 
the 16th of July; and it appears by a receipt of the president of the bank, bearing date the 22d of May 1838, that Kennedy then paid the balance of the judgment, amounting to 2104 dollars 15 cents.
In October 1838, Kennedy instituted an action in the Circuit court of Norfolk borough against Tabb as the administrator of Lee, to recover the amount which he alleged he had paid as the surety of Lee; and Tabb having pleaded nonassumpsit, and fully administered, on which pleas issues were made up, on the trial the jury found a verdict for the plaintiff on the first, and for the defendant on the second issue; and there was a judgment quando, for the plaintiff for 2381 dollars 99 cents, with interest on 277 dollars 84 cents, a part thereof, from the 16th of July 1833, until paid, and on 2104 dollars 15 cents, another part thereof, from the 22d of May 1838, until paid.
Mrs. Lee having intermarried with Chiswell Dabney of Lynchburg, Kennedy in October 1840, filed his bill in the Circuit court of the borough of Norfolk against Dabney and wife and her children, and the trustees, and Tabb as administrator of Lee, for the purpose of subjecting the slaves conveyed to the trustees, and the money paid to Mrs. Lee, under the decree of June 1833, in her suit against Tabb as the administrator of Lee, to the satisfaction of his judgment against the administrator. In his bill, after referring to the marriage articles and Mrs. Lee's suit against Tabb as administrator of Lee, he charged that the marriage articles and all the proceedings in said suit were fraudulent and void as to him; and that the marriage articles never having been recorded, were fraudulent in law as to him as a creditor of Lee.
Dabney and wife in their answer, called for proof that Kennedy was the creditor of Lee. They insisted that the marriage articles were valid in equity though not *Page 322 
recorded; and they further relied on the proceedings and decree in the case of Lee and wife against the executor of Prosser, as giving it validity. They utterly denied all fraud in procuring the decree of June 1833; and they pleaded the statute of limitations. Tabb also answered, denying all fraud if any was charged.
The facts hereinbefore stated all appear in the pleadings and proofs. And the cause came on to be heard in June 1842, when the Court held that the marriage articles were as to the complainant's demand, fraudulent and void, at least so far as to entitle him to satisfaction out of the slaves mentioned in the decree of June 1833; and decreed that unless Dabney should pay to the complainant the sum of 2381 dollars 99 cents, with its interest, and his costs at law and in this suit, within sixty days from the rising of the Court, then that he should deliver up the slaves aforesaid to the sergeant of the Court to be sold for the payment of said debt, interest and costs. And the sergeant was directed to sell the slaves on twenty days notice, at public auction, and out of the proceeds to pay the complainant. And liberty was reserved to the complainant to ask for a further decree against the defendants, if it should become necessary. From this decree the defendants, except the administrator Tabb, applied to this Court for an appeal, which was allowed.
The Court is of opinion, that the agreement entered into on the 5th December 1825 between John H. Lee and the appellant Elizabeth, in contemplation of marriage, was a valid agreement between the parties; that although for want of recordation the same would have been void as against the creditors of the said John H. Lee, it was nevertheless competent for the wife and children provided for in said agreement, to have called for the specific execution of said agreement; and if *Page 328 
there was no existing creditor or purchaser whose rights would have been affected thereby, there could have been no objection to such specific execution, even although the marital rights of the husband had attached by a reduction of the property into his actual possession. It would have been competent under such circumstances for the husband to have made a voluntary settlement, which, if duly recorded, would have been good against subsequent creditors; and a decree for the specific execution of an agreement, made in consideration of marriage where there was no existing creditor or purchaser to be affected is equally free from objection. The Court is further of opinion, that in this case the wife and children occupy a more favourable position than in the case supposed of an agreement in respect to, or a voluntary settlement of, property upon which the marital rights of the husband had attached by a reduction of the property into possession. Inasmuch as it became necessary here to apply to the Court of chancery for its aid in reducing the property into possession, it would have been competent for such Court in a proper case to have required a settlement even in the absence of any marriage contract, as a condition upon which it would interpose. The Court is further of opinion, that by the bill exhibited in the late Superior court of chancery for the Richmond district by the said John H. Lee and Elizabeth his wife, against Edmund Rootes executor of John Prosser deceased, for a division and allotment and delivery to the plaintiffs of the portion of said Elizabeth in the estate of her father, the rights of said Elizabeth and her children under said marriage agreement were brought directly to the consideration of the Court; that by the issue made up by the bill, answer and proceedings in said cause, it was proper for the Court to determine and adjudicate upon the legal effect of said agreement. The Court is further of opinion, that when *Page 329 
by the interlocutory decree and by the final decree pronounced in said cause on the 4th of February 1826, the property of said Elizabeth was decreed to be delivered over to the said John H. Lee and Elizabeth his wife, to be held by them subject to the use and stipulations of said marriage agreement, the decree in effect did set up I and execute said marriage agreement; the marital rights of the husband were thereby intercepted; and the property taken and received in virtue of said decree was thereafter held by said John H. Lee and wife as trustees under said decree for the purposes of said agreement; and not by the said John H. Lee in his character of husband alone. The Court is further of opinion, that the validity of said decree was not impaired by the failure to register the same in the county where the property was situate or found, or the parties resided; and the rights acquired in virtue of said decree are good and valid as against the subsequent creditors of the said John H. Lee. The Court is therefore of opinion, it was not competent for the appellee, a subsequent creditor of the said John H. Lee, to assail the validity of said marriage contract so as aforesaid established by the decree of the 4th of February 1826, because said contract and decree had not been duly recorded.
The Court is further of opinion, that when after the death of said John H. Lee, the widow and children filed their bill against the personal representative of said John H. Lee and obtained a decree for the recovery of such of the property as remained undisposed of, and for the value of such as had been wasted by said Lee, they asserted a claim to such undisposed of property by a title paramount to the title of the personal representative; and their title being valid under and in virtue of the decree of the 4th of February 1826 aforesaid, such recovery of the property undisposed of, and for the value of such as was wasted, is conclusive against said administrator of John H. Lee *Page 330 
and the creditors of said Lee, who became such after the decree of the 4th of February 1826; there being no allegation that said decree against the administrator of John H. Lee was collusive. The Court is therefore of opinion said decree is erroneous; reversed with costs: And this Court proceeding, c. Bill dismissed with costs.