Moncure, J.
I concur in the results of Judge Baldwin’s opinion in this case, and in much of his reasoning ; but as I am not prepared to assent to or dissent from some of the views expressed by him, it may be proper *337 that I should give the reasons which have led me to the same results to which he has arrived.
In 1807 Oliver Cross conveyed 600 acres of land and certain slaves to Doswell and Day, in trust for the benefit of himself and his wife and children. In the same year the deed was acknowledged by and recorded as to the trustees, and was proved by two witnesses as to the grantor, but never having been further proved, though there were four subscribing witnesses to the deed, it was never recorded as to him. In 1811 Day the acting trustee having died, and Doswell being unwilling to act, a suit in chancery was brought by Cross and wife to have a trustee substituted and the trusts of the deed carried into execution; and a decree was accordingly made substituting Glazebrook as trustee and authorizing him to sell and convey the laud, and further to act in all respects as trustee under the deed. In 1812 Glazebrook acting as trustee under the said decree sold 277J acres of the said laud by metes and bounds to Ragland, who executed his bond for the purchase money, payable on demand, to said Glazebrook as trustee aforesaid. The decree was particularly referred to both in the deed to Ragland and in his bond; and the deed was duly recorded. In 1816 Ragland became the surety of Oliver Cross in a forthcoming bond to Joseph Cross, on which a judgment was obtained, which was paid by Ragland. In 1825 suit was brought in the name of Glazebrook for the benefit of Darracott, (who it seems had been substituted as trustee in Glazebrook’s place,) against Ragland’s administratrix, upon Ragland’s bond for the purchase money of the land bought by him as aforesaid. In 1832 the claim of Ragland for the payment made by him of the judgment on the forthcoming bond aforesaid, was filed by his administratrix as a set-off to the plaintiff’s demand. In 1845 the suit was tried, and the Circuit court being of opinion that the deed from Oliver Cross to Dos- *338 well and Day, not having been recorded, passed no title as against Joseph Cross’s executor, and constituted no barrier to the recovery of the debt due to him out tiie fund thereby conveyed; that Glazebrook should be considered, as against the creditors of Oliver Cross, as a mere trustee for him ; that Ragland was entitled to be substituted to all the rights of Joseph Cross’s executor, and was therefore entitled to set off the debt which he had paid for Oliver Cross against the demand asserted by the plaintiff in the suit, admitted the evidence offered by the defendant of the said set-off, which was thereupon allowed by the jury, and verdict and judgment were rendered for the balance of the plaintiff’s demand, after deducting the amount of said set-off. Was the set-off a good one ? is the question now to be considered.
It is not necessary to consider in this case, whether to an action brought by a trustee, a set-off may be made of money due from the cestui que trust; or whether the law on this subject was correctly expounded in the cases of Bottomley v. Brook, and Rudge v. Birch, cited in Babington on Set-off, p. 60. It will be admitted by all, that debts which are not mutual cannot be set off at law; nor in equity, without special reason for so doing. If Oliver Cross had any interest in the bond to Glazebrook as trustee, it seems to have been an interest in common with his wife and children. Had the bond been payable to the cestuis que trust, instead of the trustee; to Oliver Cross, and his wife and children, instead of to Glazebrook; money paid by Rag-land on account of Oliver Cross alone, could not have been set off in a suit at law upon the bond. A fortiori the set-off is inadmissible, the bond being payable to the trustee. The same objection of want of mutuality exists in the latter as in the former case ; besides which a question arises in the latter but not in the former, to wit, the question above mentioned, “ whether to an ac *339 tion brought by a trustee, a set-off may be made of money due to the cestui que trust ?”
But the opinion of the Court below does not controvert the proposition that debts which are not mutual cannot be set off against each other. On the contrary, it proceeds upon the supposition that the debts in this case are mutual; that the deed from Oliver Cross to Doswell and Day, not having been recorded, passed no title as against the creditors of said Oliver; that Glazebrook should be considered as against said creditors, as a mere trustee for said Oliver; and that Rag-land was entitled to be substituted to all the rights of Joseph Cross, a judgment creditor of said Oliver, and to set off the judgment paid by him against the demand of the plaintiff.
If it were true that Joseph Cross was entitled to have the amount of his judgment against Oliver Cross paid out of the purchase money due by Ragland, without regard to any rights or interests of the wife and children of Oliver Cross, under the deed of trust of 1807, then it would follow that Ragland, having paid the judgment as surety, would have a right to be substituted to all the rights of Joseph Cross the judgment creditor. But was Joseph Cross so entitled ? I think not. The deed of trust of 1807 is not impeached as fraudulent or voluntary, and therefore void as to creditors. It does not appear that Joseph Cross was a creditor, or that there were any creditors of Oliver Cross when that deed was executed. It is assailed solely on the ground that it was never recorded. But though unrecorded it was good against the grantor and his heirs; and good against his creditors also until judgments were obtained by them. The judgment of Joseph Cross was not obtained until nine years after the execution of the deed of trust; nor until Ragland had become a purchaser of the land under a decree of a Court of chancery, received his deed, had it recorded, and been four years in possession of the *340 land. Under these circumstances I think the judgment was a lien or charge neither upon the land nor upon the purchase money; and that the cestuis que trust under the deed of 1807 are entitled to receive and hold the said purchase money against any claim of Joseph Cross founded on the said judgment, and of course against any claim of Ragland to stand in his place ; except that to the extent of any interest of Oliver Cross in the said purchase money, a Court of equity may, for special reasons, afford relief, as it might in any case in which it is sought to set off a several against a joint demand. I regard the institution of the suit in chancery for the appointment of a trustee and the execution of the trust; the rendition of the decree in that suit; and the sale and conveyance under the decree, and the recordation of such conveyance; as equivalent to the recordation of the deed of trust; and I think the cases of Childers v. Smith, Gilm. 196, and Dabney v. Kennedy, 7 Gratt. 317, fully sustain this view of the case.
It is not pretended that the land itself is bound by the lien of Joseph Cross’s judgment; but it is insisted that the purchase money yet remaining in the hands of Ragland is bound in place of the land. The purchase money was payable on demand four years before the judgment was obtained. If it had been actually paid before the judgment was obtained, it would hardly be contended that it would have been bound by the judgment, in the hands of the cestuis que trust. And yet it is not perceived how the default of the purchaser in not paying the purchase money until after the judgment was obtained, could give any right to the judgment creditor, or take any away from the cestuis que trust. If such default could have the effect of giving any right to the judgment creditor, it would seem that the loss should fall on him who committed the default; and that the lien of the judgment should operate on the land rather than the purchase money.
*341 If the land could be considered as bound in the hands of the purchaser, for the judgment of Joseph Cross, Ragland could not, I think, claim to have it paid out of the purchase money ; first, because he bought with notice that the deed was unrecorded, and might have protected himself by having it recorded at any time before the judgment was obtained. When he bought, the title Avas perfect, and it became imperfect, if at all, only by his suffering the deed to remain unrecorded until after Joseph Cross had obtained his judgment. And secondly, because Ragland purchased with special warranty only, and the covenants contained in the deed to him do not extend to the incumbrance of the judgment.
I think therefore that the evidence of the set-off was improperly admitted; and being of that opinion it is unnecessary to consider the other questions presented by the record.
Baldwin, J.
It appears that a set off was claimed at the trial for a sum of money paid by Ragland, the defendant’s intestate, in discharge of a judgment on a forthcoming bond in which he Avas surety for Oliver Cross, on the ground that the bond on Avhich the action is founded was executed to Glazebrook, the plaintiff’s intestate, in trust to secure a debt due to the said Cross: And in proof of these facts, evidence was introduced of a deed of trust made in the year 1807 by Cross, conveying a tract of land and other property to trustees, in trust to sell the land, and out of the proceeds pay a moiety to Cross, and with the other moiety to purchase other land for the separate use of Sarah, the wife of Cross, or dispose of the money as the trustees should deem most advantageous, paying her interest on her moiety of the money if not appropriated to the purchase of land: and on the death or future marriage of said Sarah, her moiety of the money, or the land therewith purchased, to be divided amongst the *342 children of the said Oliver and Sarah Cross; and it was proved that in the year 1812, a sale was made by Glazebrook, as substituted trustee, under the trust deed, of part of the land thereby conveyed, and Ragland becoming the purchaser he executed the bond on which the action is founded to Glazebrook, and received from . him a deed of conveyance. The set off so claimed was objected to by the defendant, but allowed by permission of the Court.
I can perceive no sound objection where an action is brought on a bond or note executed to the plaintiff to secure a debt due to another, to allowing the defendant to prove payment to, or a good set off against, the person so beneficially entitled. But such a set off must be governed by the rules in regard to mutuality prevailing at law, and for the most part in equity, which inhibit the set off of a joint against a separate, or a separate against a joint debt. And in this case it does not appear that Oliver Cross was entitled to the whole proceeds of the sale under the deed of trust; and to ascertain whether the fact be so would require a settlement of the trust subject and transactions by means of a suit in equity, to which all the cestuis que trust would be necessary parties. To obviate this objection it is contended on the part of the appellee that the deed of trust, which was not admitted to record, was therefore void as against Ragland, who became a subsequent creditor of Oliver Cross, the grantor, by the payment in the year 1816 of the judgment on the forthcoming bond. And this presents the question, whether the provision in our registry law declaring deeds of trust and mortgages not duly recorded void as to creditors and subsequent purchasers without notice, is applicable to a case such as the one before us.
It might be proper to consider here whether it is competent for Ragland, he having purchased under the trust deed, to impeach in his character of creditor the *343 title which he holds and enjoys in his character of pur- , . . . . chaser. But waiving that enquiry as unnecessary m this case, let us proceed to the question above stated, as it concerns the creditors in general of Oliver Cross, And in considering that question, we must first ascertain what purchasers are contemplated by the statute; for if a purchaser under and by force of an unrecorded deed of trust acquires a perfect title, then he holds the property subject only to his own debts, and not to those of any other person.
The statute, 1 Rev. Code, p. 362, § 4, provides that all bargains, sales and other conveyances whatsoever, of any lands, and all deeds of trust and mortgages, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and lodged with the clerk to be recorded, &c.
Now this enactment does not embrace purchasers under and by force of the very deed from which they derive their title. It is directed against purchasers subsequent to the deed required to be recorded, who acquire their right or title from some other instrument, for example, a subsequent deed from the same grantor. This is manifest in regard to a purchaser by an absolute deed: he is not in reference thereto a subsequent purchaser, and it would be absurd to talk of his having or not having notice of his own deed. It is equally true in regard to a purchaser under and by virtue of a mortgage or deed of trust: he cannot be considered a subsequent purchaser in reference to that deed, and it would be idle to discriminate in reference to him between purchasers with and without notice. He always has notice of the deed under and by the authority of which he purchases. It will be seen at a glance that the notice spoken of by the statute is not of the fact that the deed is unrecorded, but of the deed itself, in reference to a title subsequently acquired, and which *344 could not have been good if the prior deed against ° r ° which the second purchaser claims had been duly recorded.
. .... It is true that the terms of the statute, and its spirit too, embrace unrecorded deeds of trust and mortgages while they continue incumbrances, while they remain executory, but not after they have ceased to be incumbrances ; not after they have been executed and extinguished by a sale or foreclosure, and a conveyance of the title to the purchaser. While they continue executory, they may be successfully impeached or resisted by creditors of the grantor, whether prior or subsequent, with or without notice, or by subsequent purchasers without notice ; but not afterwards by creditors who had acquired no specific lien or incumbrance, nor by purchasers from the grantor, after he by himself, or his trustee, or judicial authority, had become denuded of all title.
A man however much embarrassed with debt may make a fair sale of his property, and convey a good title thereto beyond the reach of his creditors; and so long as he can do this by himself, he may do it by his agent, (and his trustee authorized to sell is his agent,) and the power or authority to his agent need not be recorded. A mortgagee or cestui que trust for value is a creditor, and the deed though unrecorded being good between the parties, is only void in the preference which it gives over other creditors ; and the title therefore passes, subject to the priorities which they may gain by a due course of proceeding. But the law does not shove the mortgagee or cestui que trust aside, and place the creditors at large in his seat. The latter may never assert their demands, and while they choose to lie dormant, the incumbrancer is not bound to sleep also. The deed being good between the parties, they may proceed to enforce it, otherwise it would be good for nothing. If the creditors at large ever come, they *345 must come in time, and not after the property has beeu , . 7 sold under the authority of the deed to a bona fide purchaser, who has paid his money and received his title, and thereby extinguished quoad that property, the incumbrancer on the one hand, and the creditors at large on the other. The property is thenceforth his, and he may defy them all. In this case, it is true, the whole of the purchase money has not been paid by Ragland the purchaser under the trust deed, and this action is brought to recover the balance due, but as already shewn it does not appear that Oliver Cross is exclusively entitled to it.
The payment above mentioned by Ragland in 1816, of the judgment against him and Cross on the forthcoming bond, in which Cross was the principal and he was the surety, thereby created a simple contract debt from Cross to Ragland, recoverable in assumpsit, which was barred when this action was brought in 1825 on Ragland’s bond to Glazebrook ; and so, for that reason also, was not a good set off against that bond. Rag-land by that payment did not acquire the right of being substituted at law to the judgment creditor. The doctrine of substitution is the mere creature of equity, and if introduced into the Courts of common law, must carry with it the marshalling of assets, and other kindred doctrines, and so tend to a confusion of jurisdictions. Of these subtle and pervading equities, the common law is ignorant. They have been devised by Courts of equity for their own purposes of justice, and are administered by means of their own peculiar powers, by which all parties in interest may be convened before them, all matters of account and trust adjusted, and new life infused into extinguished securities. To such purposes and means the common law forum, by reason of its forms, its technicalities and its modes of trial, is but ill adapted.
*346 These views of the merits dispense with the necessity of considering the formal errors assigned by the plaintiff in error.
. It seems to me therefore, that the Circuit court erred ¿n perrnitting the evidence of set off in the bills of exception mentioned to go to the jury; and that its judgment is therefore erroneous.
Allen, J. concurred in the opinion of Judge Moncure.
Daniel, J. concurred in the opinion of Judge Baldwin.
Judgment reversed.