Ruffin, C. J.
 

 The effect of the transaction between these parties upon the legal title is not an open question ; for, in an action of detinue, brought by the husband for the slaves, after the reconciliation, the Court held, the title at law passed to the brother, as upon a sale and delivery.
 
 Huntly
 
 v.
 
 Ratcliff,
 
 5 Ire. 542. The question is, then, for whose benefit he took the title, his own or his sister’s, or the husband’s? Upon that it would seem there could be little doubt. As the bill is framed, there is no doubt at all; because the bill states explicitly, that the original agreement by parol was, that in consideration of the money paid to him by Ratcliff on behalf of his sister and the other stipulated benefits to Huntly, he, Huntly, ,should convey the negroes — not saying to whom — to the sole and separate use of his wife, so that she might possess and enjoy them free from the husband’s debts or control; and, further, that, in execution of that agreement, the husband, after getting the money and bond, in consideraton thereof, actually delivered the negroes to the defendant Rat-cliff, upon such trust, to the sole and separate use of the wife. According to those allegations, which the demurrer admits to be true, it is perfectly clear, that there was a parol sale and delivery pf the slaves upon the al
 
 *518
 
 loged trust for the wife; and, thus taken, the whole beneficial interest would be in the wife, and the brother would have to be regarded as paying the money, and assuming the obligations set forth, out of good will and bounty to his sister, to prefer and advance her ; and, of course, the demurrer would be over-ruled. But to have that effect, it is not necessary to insist on the terms used in the bill, taken literally ; but the written contract and the attendant circumstances are sufficient to convert the brother into a trustee for the plaintiff to her
 
 separate
 
 use, with only one qualification : That is, that the brother should be entitled to insist on being reimbursed by his sister, or out of the property, the money he advanced in order to obtain the conveyance of the slaves, and for the costs and the maintenance of the plaintiff or any thing else on his account. It is just he should be thus reimbursed, if he choose to insist on it, as it does not appear that he intended a pure gift to her. But it is certáinly as just, that he should claim nothing more than the reimbursement of those sums and his expenses in the execution of the trusts ; for, undoubtedly, nobody intended or understood, that the slaves were conveyed to him as his property or, rather, to his own use. On the contrary the articles — for so they are to be regarded — -state, that he, Ratcliff, agreed, “on behalf of his sister,” &c. ; thus showing, though confused and very badly expressed, the character in which he acted and the ends in view, namely, the securing a proper provision for the plaintiff, independent of the husband. Hence, he disposes of her suit for alimony without scruple, and engages to pay the cost of it, and to give up all her claims on her husband or other parts of his estate. Then, the instrument, though not executed by the husband, but in the form of an obligation to him, proceeds to state or recite, what the husband agreed to do ; which is, “ to give his wife the said slaves, that she may forever use and enjoy them free from
 
 *519
 
 his debts or control.” That was not intended as. a present executed gift to the wife. Several reasons'show that it was not. It would have the legal title in the husband
 
 r
 
 as trustee by implication for the wife ; which would have exposed her to the necessity of seeing him again in equity, while it was the principal purpose of the arrangement to terminate all litigation between them. Besides, the husband was not to execute the instrument. Therefore, that deed was only intended as permanent evidence of an executory agreement by the husband to make a conveyance, which would be proper to secure to the wife such a separate property in the negroes, as would be equivlent toan absolute gift to her, if sole. That agreement was afterwards executed by the delivery of the negroes to Ratcliff in consideration of the price paid and the other things specified. It would have been better, no duubt, if the conveyance had been in writing, with a clause plainly setting forth the trust. But the parties seem to have been
 
 inopes consilii
 
 and very incompetent to put such transactions into approved form ; and therefore the intention is to be gathered from all the attendant circumstances. It is true, then, that there is no written declaration of trust, nor any statement that one w'as expressly made, orally, upon the delivery of the slaves to Ratcliff. But the delivery is clearly to be referred to the prior contract, and therefore the trust for the separate use of the wife was incorporated into the parol transfer; subject, nevertheless, as before mentioned, to the making good to the trustee his advances. Upon the whole, therefore, it is manifest, that there was an unequivocal intent to exclude the right of the husband, and that Ratcliff cannot in conscience hold the slaves for his own benefit; and it follows, that he took them to the use of the plaintiff, who has a right to a declaration of the use, and to the profits of the slaves, and that, to those ends, she is entitled to the defendant’s answer. Consequently, the- decree must.
 
 *520
 
 be reversed, and the demurrer over-ruled, with costs in both Courts.
 

 Per Curiam.
 

 Decree reversed.