After the demurrer was overruled (41 N.C. 514), the defendant answered and evidence was taken on both sides, by which these facts were established: In 1838 the plaintiff separated from her husband, the defendant Robert Huntley, and put herself under the protection of her brother, James H. Ratcliff, the testator of the other defendant, who undertook to act in her behalf, and as her next friend instituted proceedings for alimony. Soon thereafter the parties, at the instance of mutual friends, agreed to compromise, and on 22 May, 1838, James H. Ratcliff, in behalf of his sister, paid to the defendant Robert Huntley $200 and executed to him a bond, with a condition to pay the cost of, and to dismiss, the proceedings which had been taken for the recovery of alimony and to indemnify the said Huntley from all liability for the debts and contracts of his wife so long as she may live separate from him. On the same day the defendant Huntley delivered to James H. Ratcliff three slaves and executed to the plaintiff an actual bill of sale for the same slaves. These three acts — the (251) payment of the $200 and execution of the bond by Ratcliff, the delivery of the slaves, and the execution of the bill of sale to the plaintiff — were parts of the same transaction. On the day following the plaintiff executed to James H. Ratcliff an absolute bill of sale for the same slaves, and he and the defendant, his executor, have held them ever since. The plaintiff alleges that by the sale and delivery of the slaves the legal title vested in James H. Ratcliff, in trust, as a security for the money by him advanced and to indemnify him, and then in trust for her separate use and benefit absolutely and free from all claim on the part of her husband.
The defendant Huntley admits the plaintiff's allegation, but the other defendant denies that there was any such trust, and alleges that James H. Ratcliff, his testator, purchased the slaves and took the legal title for his own use and on his own account, and says he made the purchase "for better or for worse." If Huntley and his wife should remain separate for a long time it was "a bad bargain"; if they should become reconciled in any short time it was "a good bargain."
This presents the main question in the cause, Was the sale and delivery of the slaves to James H. Ratcliff in trust as alleged by the plaintiff, or was it a purchase by him for his own use?
We are entirely satisfied that James H. Ratcliff took the slaves in *Page 164 
trust as alleged by the plaintiff. Whether a trust can by parol be added to a deed absolute on its face is a question not presented by this case, for the conveyance was parol, viz., by sale and delivery; and, passing by that question, the fact of the trust is established by the evidence beyond all doubt. James H. Ratcliff professed to pay the $200 for and in behalf of his sister. He bound himself to dismiss the proceedings and release her claim to alimony. This he of necessity did as her agent and in her behalf, (252) and his bond recites that her husband had agreed to give her the slaves, and "that she may ever use, possess, and enjoy them free from any contract or liability on his part." Besides this, as a part of the same transaction, the husband executes to the wife an absolute bill of sale to the slaves. Although this deed could not have the effect of vesting the title in her, yet it amounted to a declaration of a trust in her favor.
We are thus relieved from the necessity of commenting upon the conduct of a brother who, after undertaking to protect and aid a sister, should attempt to speculate upon her domestic relations and to acquire as a purchaser for his own use and, in the language of the answer, "for better or for worse," property of the husband to be paid for in part by a surrender of the claim of the sister to alimony.
It was then insisted for the defendant John P. Ratcliff that although the bill of sale executed by the plaintiff to his testator was inoperative to pass title, yet it had the effect of making his possession adverse as an assertion of title in himself, which, having been continued for more than three years, gave him a good title. This position is not tenable. When, by agreement, property is to be held in trust the trustee is not at liberty to assume the position of an adversary, and cannot make a title to himself by the length of his possession because he holds for another and not for himself, and continues to be bound by the original agreement.
It was further insisted for the same defendant that the trust was a substitution of the slaves in lieu of the plaintiff's alimony, and that as a reconciliation had taken place the trust in favor of the wife had thereby determined, and, consequently, she could not maintain this bill, as the trust resulted to the husband, and it was for him to enforce it if he saw proper. This objection would come with more propriety from (253) the husband. But admitting it to be open to the other defendant, the reply is: the trust alleged and proven is an absolute one for the separate use of the wife, which "she may forever possess and enjoy, free from any contract or liability on the part of the husband." This excludes the idea of a trust resulting to the husband upon the reconciliation, and there is no allegation or proof in regard to the terms of the reconciliation. *Page 165 
There will be a decree for the plaintiff, and the defendant must pay the costs, except those of the other defendant.
PER CURIAM. Decree accordingly.
Cited: Garner v. Garner, 45 N.C. 4; Winborne v. Downing, 105 N.C. 21;Maxwell v. Barringer, 110 N.C. 83.
(254)