# Richmond.

## LAURA E. BARNES, ET ALS. V. THE AMERICAN FERTILIZER CO.

### December 17, 1925.

1. JUDGMENT AND DECREES—*Validity of Decrees Dependent upon Jurisdiction of Court Rendering it—Decrees for Divorce—Transfer to Wife of Property of Husband—Case at Bar.*—The instant case was a proceeding by attachment to subject the property of a husband which had been transferred to his wife by decrees in an action of divorce, to which decrees both husband and wife had consented.

   *Held:* That the decrees in question were valid and effective only insofar as the court had jurisdiction of the subject matter therein attempted to be adjudicated.

2. JURISDICTION—*Jurisdiction of the Subject Matter—How Acquired.*—It is fundamental that jurisdiction of the subject matter can only be acquired by the virtue of the constitution and some statute.

3. JUDGMENT AND DECREES—*Court Exceeding Jurisdiction—Void Decrees May be Attacked Directly or Collaterally.*—To the extent that the court exceeds its authority or its jurisdiction over the subject-matter embraced in its decrees, they are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question.

4. JUDGMENT AND DECREES—*Collateral Attack—Where Court had Jurisdiction of the Parties and the Subject Matter—Case at Bar.*—The instant case was a proceeding by attachment to subject land, once belonging to a husband but transferred to his wife by decrees in a divorce suit, agreed to by both husband and wife. If the court has jurisdiction of the parties and of the subject matter, and the procedure was in the usual equity form, the decrees were plainly not void, however erroneous they may have been, and cannot be collaterally attacked by a third person, unless he shows they were procured through fraud or collusion for the purpose of defrauding him as to some pre-existing right.

5. JUDGMENTS AND DECREES—*Void Judgments—Jurisdiction of the Subject Matter and Parties—Character of the Judgment.*—It is essential to the validity of a judgment or decree that the court rendering it shall have jurisdiction of both the subject matter and parties. But this

is not all, for both these essentials may exist and still the judgment or decree may be void, because the character of the judgment was not such as the court had power to render.

6. Divorce—*Jurisdiction Purely Statutory—Property of the Parties.*—The jurisdiction of divorce causes is purely statutory, and the court possesses no powers in such cases involving matters of property beyond those conferred by statute, with the exception of awarding alimony, which is an incident of divorce and based upon the doctrine of the husband's duty to maintain and support his wife.

7. Divorce—*Alimony—Decrees Transferring Husband's Real Estate as Alimony—Validity of Decrees.*—Without express statutory authority, and such authority is not to be found in section 5111 of the Code of 1919, a court has no power to transfer to the wife any specific portion of her husband's real estate as alimony; for the reason that alimony, in the commonly accepted meaning of the term, is an allowance to the wife out of the husband's earnings, or income from his estate, and not the estate itself.

8. Divorce—*Transfer of Husband's Real Estate to Wife—Section 5111 of the Code of 1919—"Estates".*—The word "estates" as used in section 5111 of the Code of 1919, embraces the contingent rights of dower and courtesy. The statute intended to give the court the right to settle the rights of each party in the property of the other, and if need be to extinguish them. While there might possibly be some other property right than that of the contingent rights of dower and courtesy which the court is empowered by this section to settle in cases of divorce, it is clear, certainly in the absence of agreement, that the power of the court is limited to the settlement of these property rights of the parties which have arisen by operation of law out of the marital relation, and the protection of their respective estates.

9. Divorce—*Jurisdiction of the Court to Approve Agreements and Settlements Between the Parties.*—Although courts may have no authority, in the absence of statute, to allot to the wife any part of the husband's real estate as *alimony,* courts which have jurisdiction to grant divorces and award alimony also have the incidental authority to approve *bona fide* and valid agreements between the parties for the settlement of property rights and claims for alimony, though they have no jurisdiction in the divorce suit to enforce compliance with such contracts, or to alter their terms.

10. Divorce—*Decree Approving Agreement and Settlement Between the Parties—Decree not a Decree for Alimony.*—A decree entered in a divorce suit approving a contract between the parties for the settlement of alimony and property rights, is not a decree for alimony.

11. Divorce—*Decree Approving Agreement and Settlement Between the Parties—Decree not one for Alimony—Case at Bar.*—In the instant case decrees for divorce ratified and approved an agreement between

the parties by which real estate of the husband was transferred to the wife. The decree recited that this was done in order to avoid protracted litigation concerning the property rights of the parties, and insofar as the decrees in question undertook to approve the agreement between the husband and wife, they were within the limits of the court's jurisdiction, and did not constitute an attempt on the part of the court to transfer to the wife title to her husband's real estate as alimony.

12. DIVORCE—*Settlement Between the Parties—Ratification and Approval by Court.*—In divorce proceedings the court has the right to set forth in its decrees an agreement between the parties as to their property rights; to determine whether such agreement was fair and equitable, and in good faith; and, upon so finding, to ratify and approve the same; and this action being within the jurisdictional powers of the court, the decrees are valid and binding to that extent if no other.

13. JUDGMENT AND DECREES—*Jurisdiction of Court—Valid in Part, Invalid in Part.*—When a court has jurisdiction of the cause and the parties, its judgment, so far and within its powers, is valid, though it may be invalid in other respects. A judgment may be good in part, and bad in part. Good to the extent it is authorized by law, and bad for the residue.

14. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Recording Acts—Application of Section 5192 of the Code of 1919 to Contracts Embodied in Valid Decrees.*—Section 5192 of the Code of 1919, providing that contracts not in writing, for the conveyance or sale of real estate, shall be void as to purchasers for value, does not apply to contracts embodied in valid decrees entered by courts of equity.

15. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Recording Acts—Section 5192-5194 of the Code of 1919—Divorce Decree Approving Agreement Transferring Real Estate of Husband to Wife—Case at Bar.*—In the instant case, upon the application of the wife in a divorce suit for alimony, suit money and "other relief," the parties came before the court and laid before it a compromise agreement which they had entered into for the settlement of alimony and property rights; by which real property of the husband was transferred to the wife; whereupon the court, as it had a right to do, approved and adopted the agreement, and incorporated it in its decree.

*Held:* That the registry statutes (sections 5192, 5194 of the Code of 1919) did not extend to these decrees, and that the rights acquired by the wife and children, by virtue of the decrees, were not subject to the subsequent attachment lien of a creditor of the husband. Nor could it matter whether the agreement was or was not in writing.

16. CONTRACTS—*Judgments and Decrees—Judgment as Contract.*—Judgment and decrees are contracts of the highest character and especially is this so when entered by consent.

1. JUDGMENT AND DECREES—*Consent Decrees.*—A consent decree is a contract or agreement between the parties to the suit entered of record in the cause with the consent of the court, and is binding unless secured by fraud or mistakes.

18. DIVORCE—*Decrees Ratifying and Approving Transfer of Husband's Real Estate to Wife—Interest Vested in Wife by Decree—Case at Bar.*—In the instant case, a proceeding by attachment to subject land of husband transferred to his wife by agreement approved in divorce decrees, if the court had jurisdiction to approve the agreement such approval could have no less effect than to give the wife the right in the absence of fraud, collusion, or imposition upon the court, to enforce compliance with the terms of the agreement in the proper proceedings in the proper forum; and she was thereby vested with an equitable interest in the real estate in controversy, which not being within the operation of the registry statutes, is superior to the lien of the attachment in this case. After the entry of the divorce decrees, the husband had the bare legal title to the property as trustee.

19. ATTACHMENT AND GARNISHMENT—*Protection of Interest of Third Party—Section 6407 of the Code of 1919.*—The evident purpose of section 6407 of the Code of 1919 was to protect the equitable as well as the legal rights and interests of third persons in the attachment proceedings, and the lien of an attaching creditor should be subordinated to all such rights and interests as exist at the time the attachment is levied.

20. JUDGMENT AND DECREES—*Judgment Lien—Rights of Third Party.*—A judgment lien is always subject to every possible description of equity held by a third party against the debtor at the time the judgment attached; and it is immaterial whether the rights of such third party consists of an equitable estate or interest in the judgment debtor's land, an equitable lien on his land, or a mere equity against the debtor which attaches to or affects his land. Nor is it at all material whether the judgment debtor has or has not, when he contracted his debt, or obtained his judgment, or docketed the same, notice of such equitable estate, equitable lien, or mere equity. If they be prior in time to the judgment, they will always be preferred to the judgment lien.

21. DIVORCE—*Decrees Approving Transfer of Husband's Real Estate to Wife—Reconciliation—Revocation of Decree in Part.*—In the instant case, an attachment proceeding against land formerly belonging to a husband but transferred to his wife by agreement approved by divorce decrees, the parties were subsequently reconciled and the decree of divorce from bed and board was revoked.

*Held:* That this did not revoke the settlement of property rights and alimony, approved by the preceding decrees, where it appeared that it was not the intention of either the parties or the court to

interfere with or cancel the contract, which had been previously entered into, and which in effect constituted a postnuptial settlement on the wife.

22. MARRIAGE SETTLEMENTS—*Postnuptial Settlements—Subsequent Reconciliation.*—A postnuptial settlement or agreement made when the parties are already separated or while a divorce suit is pending between them, as a matter of law, is not abrogated by the subsequent reconciliation of the parties.

23. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Divorce Decrees Approving Agreement for the Transfer of Husband's Real Estate to Wife—Attachment on the Ground of Nonresidence.*—The instant case was a proceeding by attachment to subject the land of a husband which had been transferred to his wife by an agreement approved by divorce decrees. There was no charge of fraud or collusion on the part of the parties in the divorce proceeding. The attachment was sued out upon the sole ground that the husband was not a resident of the State. The consideration for the agreement between the husband and wife was a settlement of property rights, claims for alimony, etc. This constituted a valuable consideration and the transaction was not *prima facie* fraudulent. There was no evidence to show that the settlement was excessive.

*Held:* That the wife's interest in the real estate was superior to the lien of plaintiff's attachment.

Error to a judgment of the Circuit Court of Charlotte county, in a proceeding by attachment. Judgment for plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*George E. Allen,* for the plaintiffs in error.

*J. Kent Early* and *Leake & Burford,* for the defendants in error.

CHINN, J., delivered the opinion of the court.

The material facts of this case, as disclosed by the record, are as follows:

On November 9, 1923, the American Fertilizer

Company (defendant in error here) filed its petition for attachment against O. O. Barnes, principal defendant, and Laura E. Barnes, codefendant, alleging a debt to be due said company by O. O. Barnes; that said Barnes is not a resident of the State of Virginia, and that said Laura E. Barnes is indebted to and has in her possession property of O. O. Barnes, real and personal, which is sought to be attached.

A writ of attachment was accordingly issued and levied upon certain real estate situated in the town of Keysville, Va., containing seven acres, more or less, together with the improvements thereon. The codefendant, Laura E. Barnes, filed an answer under oath to the petition, denying that she is indebted to or has in her possession any property belonging to O. O. Barnes, and alleging, in addition to other matters, that the property so attached belonged to respondent and her children, L. C. Barnes, Otis Barnes, and Wilmer Barnes, the last two being infants, by virtue of certain decrees entered in a suit for divorce previously pending between said O. O. Barnes and the respondent.

The above mentioned L. C. Barnes, and the infants, Otis Barnes and Wilmer Barnes, by next friend, also filed a joint petition in the proceedings, claiming an interest in the property levied on, upon the same grounds as alleged in the answer of Laura E. Barnes, and praying to be made parties and allowed to defend their title to said property.

It appears from said answer and petition that O. O. Barnes instituted a suit for divorce against his wife, Laura E. Barnes, on July 27, 1921, and, on August 29, 1921, a decree was entered therein settling the property rights between the parties and awarding the custody of the infant son Wilmer Barnes to the mother; that on October 4, 1921, a second decree was en-

tered in the cause granting O. O. Barnes a divorce *a mensa et thoro* from Laura E. Barnes, and ratifying in all particulars the provisions of the previous decree as to the property rights and other collateral matters therein adjudicated; that on January 2, 1922, said O. O. Barnes and Laura E. Barnes filed their joint petition in said divorce cause praying that so much of the decree of October 4, 1921, as granted said husband a divorce from his wife be revoked, and on the same day a decree was entered accordingly.

O. O. Barnes having been proceeded against by order of publication and failing to appear, all matters of law and fact were submitted to the court, without the intervention of a jury, whereupon the court rendered judgment for the American Fertilizer Company in the sum of $6,075.72, with interest, and further adjudged the property levied on and in dispute to be "the property of O. O. Barnes, subject to the contingent right of dower of the codefendant Laura E. Barnes, and liable to be subjected to the plaintiff's debt." It is to that judgment this writ of error was awarded.

Certified copies of the decrees and joint petition in the divorce proceedings were exhibited with Mrs. Barnes' answer, and are as follows:

"Virginia:
   "In the Circuit Court of the County of Charlotte.
"*O. O. Barnes*

        v.

"*Laura Barnes.*

   "Decree in Vacation, August 29, 1921.

   "This cause came on this day to be heard upon the motion of the defendant, Laura Barnes, duly executed upon the complainant, O. O. Barnes, ten days prior to this date, that she would ask for the entry of a

decree herein for temporary alimony, suit money, attorneys fees, and other relief in this cause; upon the complainant's bill; and was argued by counsel.

"Upon consideration whereof, it appearing to the court that protracted litigation concerning the property rights of the parties to this cause would consume the bulk of the estate of the complainant, O. O. Barnes, and that in order to avoid this result, counsel for the parties have undertaken to agree upon a fair and equitable division of said property rights, as follows, to-wit: The complainant, O. O. Barnes, shall grant to his wife, the said Laura Barnes, for and during her natural life, or until her lawful remarriage, with remainder to their children upon her remarriage or death, whichever shall happen first, the home place in Keysville, Virginia, upon which his said wife and children now reside; that he shall pay to the defendant's attorney of record, Mr. H. E. Lee, the full sum of $250.00 in full of his services rendered and to be rendered by him to the said defendant in this cause; that he shall pay an account at the store of D. S. Gaulding, Keysville, Virginia, for necessaries furnished the defendant for herself and children living with her in a sum not to exceed $240.00; that the custody of the youngest child, Wilmer, shall remain with the defendant two-thirds of the time and with the complainant one-third of the time, unless for good cause subsequently shown there is a decree determining otherwise: that the said O. O. Barnes shall support and maintain the said child, Wilmer, until otherwise decreed by a court with competent jurisdiction, until the said child shall become self-supporting; that in the meantime, until otherwise decreed, the said O. O. Barnes shall pay to the defendant, on the first day of each month hereafter, the full sum of $15.00 for the support and maintenance of the

said child; that the marital rights of each party to this suit in and to property owned by the other be hereby extinguished; that as to all property of whatsoever nature and wheresoever situated now owned by either of the parties hereto or to be hereafter acquired by either, each of the said parties hereto shall be free and discharged of all claims or rights of the other by virtue of the marital rights growing out of the aforesaid marriage in the bill in this cause mentioned:

"The court doth adjudge, order and decree that the said compromise agreement in reference to the said property rights be, and the same hereby is, ratified and confirmed, and that in full for all claims for alimony, suit money and support, the said Laura Barnes is hereby granted and allotted, out of the estate of said O. O. Barnes for and during her natural life, or until she remarries, whichever shall happen first, with remainder to their children born of the aforesaid marriage, the following property, to-wit: That certain lot or parcel of land in the town of Keysville, Virginia, Charlotte county, on the Keysville and Meherrin road, adjoining the lands of S. R. Tuggle and others, which was conveyed to the said O. O. Barnes by deed dated December 31, 1918, and of record in Charlotte court clerk's office, Deed Book No. 71, p. 286, to which reference is hereby made for a more particular description of the said property; that the said defendant is also granted the custody of the said child, Wilmer, for two-thirds of the time and the complainant, O. O. Barnes, for the remaining one-third of the time, until otherwise decreed by this or some other court of competent jurisdiction in the premises; that the said O. O. Barnes do pay to the said Laura Barnes for the support and maintenance of the said Wilmer Barnes the sum of $15.00 per month, payable on the first of each

month hereafter until otherwise decreed by a court of competent jurisdiction; that the said O. O. Barnes do pay to H. E. Lee, Esq., attorney of record for the defendant, Laura Barnes, the full sum of $250.00 in full of his fee for his services to the defendant rendered and to be rendered; that the said O. O. Barnes pay to D. S. Gauding, of Keysville, Virginia, not exceeding $240.00 in full of the account of the defendant with the said Gaulding for necessaries furnished her for herself and two children living with her; that the marital rights of each party to this suit in and to the property owned by the other party be and the same hereby are extinguished; that as to all property of whatsoever nature and wheresoever situated now owned by either of the parties hereto, or to be hereafter acquired by either, each of the said parties hereto shall hold the same free and discharged of all claims and rights of the other party growing out of the said marriage relation; and this case is continued generally for further proceedings to be had therein not in conflict with law."

"Virginia: In the Circuit Court of Charlotte county.
*O. O. Barnes,* Complainant,

v.

*Laura E. Barnes,* Defendant.

"Decree in Vacation, October 4, 1921.

"This cause came on this day in vacation, to be again heard upon the papers formerly read; proof of legal service of due notice upon the defendant in person, in writing, that the bill and proceedings in this case would be this day presented to the judge of the Circuit Court of Charlotte county for action thereon; the depositions of witnesses; the answer of the defendant, this day filed by leave of court; and was argued by counsel.

"On consideration whereof, and it appearing to the court from the evidence in this cause, independently of the admissions of either party in the pleadings, or otherwise, that the said parties were lawfully married on the 20th day of December, 1898; that both the said O. O. Barnes and Laura E. Barnes have resided and have been domiciled in this State for more than one year next preceding the commencement of this suit; that the said O. O. Barnes and Laura E. Barnes last cohabited in the county of Charlotte; that in December, 1920, the said Laura E. Barnes wilfully deserted and abandoned the said O. O. Barnes, voluntarily, and without any justification whatever, and has since voluntarily, wilfully and without any justification, remained away from him; the court doth adjudge, order and decree that the said O. O. Barnes be, and he hereby is, granted a divorce *a mensa et thoro* from the said Laura E. Barnes.

"The court doth further adjudge, order and decree that the provisions contained in the former decree entered herein in reference to property rights of the parties be, and they are hereby, ratified and confirmed, and the marital rights of each party be, and the same hereby are, extinguished; that the said property awarded to the said Laura E. Barnes in the former decree herein shall be held by her free and discharged of all claims of the said O. O. Barnes, by virtue of the curtesy or otherwise; and that all property, which the said O. O. Barnes now owns, or may hereafter acquire, shall be held by him free and discharged of any claims whatever of the said Laura E. Barnes, by virtue of the contingent dower or otherwise. The question of the custody of the infant, Wilmer Barnes, is not to be affected by this decree, but the same is left just where it was placed by the former decree entered herein,

with the right of either party to apply to the court for such relief in reference to the custody of said child as the court may deem proper to grant, upon any evidence that will be subsequently produced before the court.

"Endorsed on back as follows:

"I have seen this decree.

"H. E. LEE,

"Attorney for Laura E. Barnes.

"We ask for this decree.

"GEO. E. ALLEN, HUTCHESON AND EARLY,

"Attorneys for O. O. Barnes."

"To the Hon. Geo. J. Hundley, Judge of Charlotte Circuit Court.

"Your petitioners, O. O. Barnes and Laura E. Barnes, respectfully represent unto your honor, that a decree was entered by your honor in vacation of the Circuit Court of Charlotte county, on the 4th day of December 1921, whereby your petitioner, O. O. Barnes, was granted a decree of divorce *a mensa et thoro*, from petitioner, Laura E. Barnes, on the grounds of desertion; that since the rendition of said decree your petitioners have become reconciled and now both desire and ask that said decree be revoked under section 5115 of the Code of Virginia, of 1919; that your petitioners desire to again live together as man and wife.

"Petitioners therefore earnestly request that your honor revoke so much of said decree as granted to O. O. Barnes a divorce from said Laura E. Barnes *a mensa et thoro.*

"(Signed) O. O. BARNES

"LAURA E. BARNES."

"In Charlotte Circuit Court, in vacation, January 2, 1922.

"*O. O. Barnes*
   v.
"*Laura E. Barnes.*

"Decree.

"This day came the parties in person and filed an application and petition by leave of court, wherein they ask the court to revoke so much of the decree entered in this cause on the 4th day of December, 1921, whereby a divorce *a mensa et thoro* was granted. to O. O. Barnes.

"On consideration whereof, it appearing to the court from said petition and from the oral testimony of O. O. Barnes, that the said plaintiff and defendant have become reconciled and have agreed and now wish to again live together as man and wife, the court doth accordingly grant the prayer of said petition and doth adjudge, order and decree that so much of said decree as granted a divorce *a mensa et thoro* to said O. O. Barnes from said Laura E. Barnes be, and the same is hereby, cancelled, annulled and revoked, and the parties restored to their marital rights."

In addition to the above documentary evidence, the record contains a certificate of the following agreed facts:

"It was admitted by counsel for both American Fertilizer Company and Counsel for Laura E. Barnes and petitioners, L. C. Barnes, and Otis and Wilmer Barnes, that Laura E. Barnes became reconciled to O. O. Barnes upon the express condition that the property rights of the parties should remain as they were fixed by the decrees entered in the divorce suit under date of August 29, 1921, and October 4, 1921.

Barnes *v.* American Fert. Co., 144 Va. 692. 705.

Opinion.

"It was further admitted by said counsel that the indebtedness set forth in plaintiff's petition for attachment was owing and an existing debt upon the filing of the said divorce suit, and now remains unpaid."

"It was further admitted that said O. O. Barnes is now a nonresident of Virginia and that after the entry of the decree dated January 2nd, 1922, he deserted the said Laura E. Barnes."

The only assignment of error is to the action of the court in holding that the property levied on is the property of O. O. Barnes and liable to be subjected to the debt for which the attachment was issued.

[1, 2, 3] Upon this record the first question presented for the consideration of this court is the extent of the court's authority to pass the decrees of August 29th and October 4th hereinbefore set out. In other words, the decrees in question are valid and effective only insofar as the court had jurisdiction of the subject matter therein attempted to be adjudicated; and it is fundamental doctrine that "jurisdiction of the subject matter can only be acquired by virtue of the constitution and some statute;" *Shelton* v. *Sydnor*, 126 Va. 625, 102 S. E. 83. To the extent, therefore, that the court exceeded its authority, or its jurisdiction, over the subject matter embraced in the decrees, they are absolute nullities, and may be impeached directly or collaterally by all persons, anywhere, at any time, or in any manner; and may be declared void by every court in which they are called in question. *Wade* v. *Hancock*, 76 Va. 620; *Seamster* v. *Blackstock*, 83 Va. 232, 2 S. E. 36, 5 Am. St. Rep. 262; *Neale* v. *Utz*, 75 Va. 480; *Shelton* v. *Sydnor*, 126 Va. 625, 102 S. E. 83.

[4] On the other hand, if the court had jurisdiction of the parties and of the subject matter, and the pro-

cedure was in the usual equity form, the decrees are plainly not void, however erroneous they may have been, and cannot be collaterally attacked by a third person, unless he shows they were procured through fraud or collusion for the purpose of defrauding him as to some pre-existing right; *Michaels* v. *Post*, 21 Wall. 398, 22 L. Ed. 520; *Wilcher, et als.* v. *Robertson*, 78 Va. 602; *Alvie* v. *Saunders*, 113 Va. 208, 74 S. E. 153, 34 Cor. Jur. p. 526.

" 'By jurisdiction over the subject matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court and is to be sought for in the general nature of its powers, or in the authority specially conferred.' *Cooper* v. *Reynolds*, 10 Wall 308, 19 L. Ed. 931. If not fixed by the Constitution, the legislature alone can determine of what subjects the several courts of the State shall have jurisdiction. No consent of parties can confer it, and a judgment outside the jurisdiction is simply void." *Thacker* v. *Hubard*, 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414.

[5] "Now it is essential to the validity of a judgment or decree, that the court rendering it shall have jurisdiction of both the subject matter and parties. But this is not all, for both these essentials may exist and still the judgment or decree may be void, because the character of the judgment was not such as the court had power to render." *Anthony* v. *Kasey*, 83 Va. 338, 5 S. E. 176, 5 Am. St. Rep. 277.

It is contended in behalf of plaintiffs in error that the circuit courts have authority in divorce cases, by virtue of the provisions of section 5111 of the Code, to transfer to the wife title to a specific portion of the husband's real estate as alimony, when there is no objection on the part of the husband, and for that

Barnes *v.* American Fert. Co., 144 Va. 692.   707

Opinion.

reason the decrees referred to had the effect of vesting title to the property in question in Mrs. Barnes and the children named.

The statute, so far as pertinent, reads as follows:

"Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, the court may make such further decree as it shall deem expedient concerning the estate and maintenance of the parties or either of them.   *   *   *   *   ."

While it is true this precise question, so far as we are advised, has not heretofore been presented to the appellate court of this State, we consider that it has been practically settled in Virginia by several decisions in which the question was indirectly involved.

In *Harris* v. *Harris*, 31 Gratt. 13, it was said: "Alimony had its origin in the legal obligation of the husband, incident to the marriage state, to maintain his wife in a manner suited to his means and social position." And in *Latham* v. *Latham*, 30 Gratt. 338: "Alimony is an allowance made to the wife out of the husband's estate or income, upon a decree of separation." And in *Cralle* v. *Cralle*, 84 Va. 198, 6 S. E. 12: "The general rule undoubtedly is, that the income of the husband, whether derived or to be derived from his personal exertions or from permanent property, or from both, is the fund from which alimony is to be decreed."

[6] The jurisdiction of divorce causes is purely statutory (2 Bish. Mar. Div. & Sep., sec. 1231), and the court possesses no powers in such cases involving matters of property beyond those conferred by statute, with the exception of awarding alimony, which is an incident of divorce and based upon the doctrine of the husband's duty to maintain and support his wife.   2

Bish. Mar. Div. & Sep. Sec. 829; *Reynolds* v. *Reynolds*, 68 W. Va. 15, 69 S. E. 381, Ann. Cas. 1912A, 889.

[7] In *Lovegrove* v. *Lovegrove*, 128 Va. 449, 104 S. E. 804, where the wife complained that the court refused to permit her and her infant children to occupy the husband's dwelling house, after a decree of separation, Judge Prentis, speaking for the court, said:

"The general rule is that a wife is not entitled to have any specific parcel of real estate assigned as her own. Alimony is usually an allowance in money out of the husband's estate, but not the estate itself. Although the decisions are not harmonious, the very great weight of authority is to the effect that unless there is express statutory authority therefor, the court possesses no power to vest in the wife title to a specific portion of the husband's real estate.

"In *Almond* v. *Almond*, 4 Rand. (25 Va.) 668, 15 Am. Dec. 781, it is said: 'Now the claim of the wife for alimony is a personal claim on the husband; she has no lien on any specific property, without an agreement. She can no more, therefore, ask the court to assign her this negro, or that tract of land, than a creditor of the husband could come into court and ask such an assignment, which we know without a particular lien could not be done.' "

It is true the learned judge who delivered the above opinion expressed himself as unwilling to say that there could not be any case in Virginia in which the court could not permit a wife and her infant children to occupy a dwelling house owned by the husband, but it is nowhere intimated in *Lovegrove* v. *Lovegrove*, *supra*, or any other Virginia decision, either before or after the present statute took effect, that the court has power to transfer to the wife any specific portion of the husband's real estate as alimony. On the other hand,

*Lovegrove* v. *Lovegrove* and such other decisions in this State as touch the subject expressly declare to the contrary, as do the great bulk of decisions in other jurisdictions where there is no statute to authorize it. This court, at least, is unable to find in our statute any such express authority as is said by the court in *Lovegrove* v. *Lovegrove* to be necessary. Without such authority a court has no power to transfer to the wife any specific portion of her husband's real estate as alimony; for the reason that alimony, in the commonly accepted meaning of the term, is an allowance to the wife out of the husband's earnings, or income from his estate, and not the estate itself.

[8] In *Gum* v. *Gum*, 122 Va. 32, 94 S. E. 177, it was held that the term "estates" as used in section 5111 embraces contingent right of dower, and the statute intended to give the court the right to settle the rights of each party in the property of the other, and if need be to extinguish them. Whilst we do not wish to be understood as saying that there might not possibly be some other property right than that of contingent rights of dower and courtesy which the court is empowered by the statute to settle in cases of divorce, we think it clear, certainly in the absence of agreement, that the power of the court is limited to the settlement of those property rights of the parties which have arisen by operation of law out of the marital relation, and the protection of their respective estates. In *Reynolds* v. *Reynolds, supra,* wherein a statute identical with ours was construed, it was said: "The words 'concerning the estate' of the parties, are evidently meant to give the court authority to protect each party in the possession and enjoyment of his or her respective estate, subject to such alimony as may be decreed, and not to authorize the transfer of the legal title to the land by way of alimony."

[9] It cannot be questioned, however, that, although courts may have no authority, in the absence of statute, to allot to the wife any part of the husband's real estate as *alimony,* courts which have jurisdiction to grant divorces and award alimony also have the incidental authority to approve *bona fide* and valid agreements between the parties for the settlement of property rights and claims for alimony, though they have no jurisdiction in the divorce suit to enforce compliance with such contracts, or to alter their terms. This seems to be the general rule, and has been so held in several cases in this State. *Newman* v. *McComb,* 112 Va. 408, 71 S. E. 624; *Cumming* v. *Cumming,* 127 Va. 16, 102 S. E. 572; *Moore* v. *Crutchfield,* 136 Va. 20, 116 S. E. 482.

Mr. Bishop states the rule as follows: "Where parties about to apply for a divorce, or while a divorce suit is pending, undertake to arrange questions of alimony between themselves they are liable to fall upon some of the collateral obstructions stated in the preceding chapter just cited. But if nothing is done, intended or adapted to stimulate the divorce proceeding or to keep any facts from the court, or to work any sort of fraud upon the public or the law, effect will be given to such mutual property or alimony arrangements as they may fairly make. They ought to lay their bargainings before the tribunal, and if on inquiry it finds the provision for alimony fair and equitable it will enter a decree pursuant thereto." 2 Bish. Mar. Div. & Sep., Sec. 884.

In *Cumming* v. *Cumming, supra,* where an antenuptial contract between the parties was held to be invalid for the reason that it facilitated the separation of the parties after marriage, Judge Sims, speaking for the court, said: "And the weight of authority and

better opinion, indeed, is that even *bona fide* ante-nuptial and postnuptial contracts, valid in all other respects, cannot bind the action of the court on the subject of alimony. The court will usually adopt such contract provisions if just and reasonable; otherwise it will not do so. 1 Page on Contracts, section 430."

[10] And engrafted upon the rule above referred to is the further doctrine that a decree entered in a divorce suit approving a contract between the parties for the settlement of alimony and property rights, *is not a decree for alimony.*

In *Moore* v. *Crutchfield, supra,* a contract had been entered into between Warner Moore, Jr. and his wife, while a suit for divorce was pending between them, for the settlement of alimony and property rights. This contract, after expressing the mutual desire of the parties to accomplish that purpose, provided that Mr. Moore should pay his wife, "in lieu of all claims for support and maintenance, or for alimony," and in "full settlement of all her property rights, by reason of said marriage" the sum of $25.00 per month for the period of three years from November 1, 1917, and upon final adjudication of the divorce cause, should pay her the sum of $5,000.00 in cash. Two days afterwards a decree was entered in the divorce suit which contained this provision: "And it appearing that all property interests and alimony have been fully settled and agreed upon between the plaintiff and the defendant, as appears from an agreement herewith marked exhibit 2, the court doth, in all respects, approve said settlement as to said alimony and property rights of the respective parties hereto, provided, however, that the said defendant shall, in addition thereto, pay the costs of this suit, and the fee of $500.00 to Gunn & Mathews, counsel for the plaintiff."

Mrs. Moore having died shortly after the entry of this decree, her administrator sued Mr. Moore for the recovery of the amount he agreed to pay his wife under the contract, and there was judgment for the plaintiff. In the opinion of the court reviewing this judgment, the contract between the parties filed in the divorce proceedings and approved by the court was upheld, and the Supreme Court of Appeals quoted with approval from the opinion of the judge who tried the case in the court below, in part, as follows:

"The decree of divorce from bed and board separating the wife from the defendant here does not undertake to direct that the husband shall pay the wife alimony. There is no alimony awarded or allowed the wife. The fact that the court approved the agreement made between the parties partly in lieu of alimony does not make the order of court a decree for alimony. There is nothing in that decree that can give it the force and effect of a judgment against the husband for the amount agreed to be paid the wife, a result that follows from the usual decree ordering the payment of alimony. *Isaacs* v. *Isaacs*, 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648."

"A decree of court approving a contract between parties providing for payments in lieu of alimony and for the settlement of the property rights of the parties is not a decree for alimony, and the court has no jurisdiction in the divorce suit to enforce compliance with the contract, nor to alter its terms upon subsequent application of one of the parties. 19 Corpus Juris, p. 251, and notes; *Ibid*, p. 340; *Pryor* v. *Pryor*, 88 Ark. 302, 114 S. W. 700, 129 A. St. Repts. 102."

Let us now consider the validity and the effect of the decrees in the case before us.

The decree of August 29th, after reciting that "pro-

Barnes v. American Fert. Co., 144 Va. 692.   713

Opinion.

tracted litigation concerning the property rights of the parties to this cause would consume the bulk of the estate of the complainant, O. O. Barnes, and in order to avoid this result, counsel for the parties have undertaken to agree upon a fair and equitable division of said property rights," sets forth specifically and in detail the agreement between the parties by which O. O. Barnes obligates himself, among other things, to "grant" the real estate therein mentioned to Mrs. Barnes, with certain limitations over to her children. The decree then proceeds to ratify and confirm "the said compromise agreement in reference to said property rights," and to grant and allot the real estate described therein to Mrs. Barnes and her children upon the terms and conditions stipulated in the agreement.

The decree of October 4th, after granting the divorce, proceeds to ratify and confirm the provisions of the preceding decree as to the property rights of the parties, and to extinguish all marital rights of each party in the property of the other. This decree is endorsed: "I have seen this decree. H. E. Lee, attorney for Laura E. Barnes." "We ask for this decree. Geo. E. Allen, Hutchinson and Early, attorneys for O. O. Barnes." It is evident that in order to arrive at the true meaning and intent of these two decrees, and their effect, they must be read and taken together.

In considering the question of the validity of the decrees it may not be superfluous to restate the doctrine established by the authorities hereinbefore cited, to the effect: That, although a court may have no power in a divorce suit to transfer to the wife title to her husband's real estate as alimony, it has authority in such suit to approve agreements between the parties for the settlement of alimony and property rights,

though it has no authority to enforce them; and that a decree approving such an agreement is not a decree for alimony.

[11] It follows that insofar as the decrees in question undertook to approve the agreement between Mr. Barnes and his wife they were within the limits of the court's jurisdiction, and did not constitute an attempt on the part of the court to transfer to Mrs. Barnes title to her husband's real estate as *alimony.*

[12, 13] We are, therefore, of the opinion that the court had the right to set forth in its decrees the agreement between the parties, as it did; to determine whether such agreement was fair and equitable, and in good faith; and, upon so finding, to ratify and approve the same; and this action being within the jurisdictional powers of the court, the decrees are valid and binding to that extent if no other. It is well settled that when a court has jurisdiction of the cause and of the parties, its judgment, so far and within its powers, is valid, though it may be invalid in other respects. 1 Freeman Judg. M'ts., sec. 120; *Wade* v. *Hancock,* 76 Va. 620; *White* v. *Palmer,* 110 Va. 490, 66 S. E. 44. "A judgment may be good in part, and bad in part. Good to the extent it is authorized by law, and bad for the residue." 15 R. C. L., p. 843. In the case of *Emmerson* v. *Emmerson,* 120 Md. 584, 87A, 1033, the parties had made an agreement through counsel, while a divorce suit was pending between them, by which the husband obligated himself to pay the wife a certain annual sum of money until her death, irrespective of whether she survived him or not, and, also to transfer to her certain property absolutely, and to surrender certain other property to trustees as security to enforce such payment during the wife's life. The agreement was adopted by the court in the

divorce proceeding and incorporated bodily in the decree of divorce. The wife afterwards remarried and there was a controversy between the parties as to the validity and effect of the decree entered in the divorce suit which embodied the said agreement. In the course of its opinion in the above case the court said: "The practice is common, nevertheless, for courts to incorporate in their decrees provisions as to alimony which have been agreed to by the parties. The court, however, must be satisfied that the agreement was not the result of collusion on the main point of divorce. The practice is to submit the agreement to the court, and if the court is satisfied that it is a proper settlement it will receive the sanction of a decree. 2 Bishop on Marriage and Divorce, section 702; Nelson on Marriage and Divorce, section 915. Then the validity of the award depends not upon the agreement, but upon the judgment or decree."

The court then proceeded to hold that if a court approves the provisions of an agreement as to alimony it can incorporate them in its decree; that as the agreement, in the case before it, was a plain attempt on the part of the husband to have allowed to his wife something more than, under the law, could have been allowed as alimony, the said decree was not a decree for alimony; and that the agreement between the parties should be upheld according to its terms. After referring to the provisions of the agreement, the court concludes its opinion as follows: "None of these could have been decreed without his consent and the conclusion is clear that he intended under this agreement to assure his wife these provisions during the balance of her life, irrespective of any contingencies. The court having embodied his agreement in the decree, we are of the opinion that a court of equity should not disturb it."

[14] It having been determined that the decrees are valid to the extent that they set out and approve the compromise agreement between the parties in the divorce suit, it now becomes necessary to consider the effect of said decrees as against third parties,. such as the attaching creditor in this case. It is contended by counsel for the fertilizer company that, as it does not appear from the record or by extrinsic evidence that the agreement between the parties was in writing and admitted to record, the agreement is void as to creditors of O. O. Barnes under the provisions of sections 5192 and 5194 of the Code. Section 5192, so far as pertinent, provides:

"Every contract, not in writing, * * * * * made for the conveyance or sale of real estate, * * * * * shall be void, both at law and in equity, as to purchasers for value and without notice, and creditors. * * * ." And section 5154, so far as pertinent, provides that:

"Every such contract in writing, * * * * * shall be void as to * * * * subsequent purchasers for valuable consideration and without notice and creditors, whether general or by lien, until and except from the time it is duly admitted to record and indexed as required by law. * * * * * ."

The full history and purpose of section 5192 is given in the opinion delivered by Judge Keith in the case of *Straley* v. *Essex*, 117 Va. 135, 83 S. E. 1075, and it can serve no necessary purpose to repeat it here. Sufficient to say, its purpose "was to change the law as declared in *Floyd* v. *Harding*, 28 Gratt. 401, and subsequent Virginia cases recognizing and following the doctrine of that case."

At the time of the decision in *Floyd* v. *Harding* the registry acts did not require a contract for the con-

veyance or sale of real estate to be in writing, although those acts required every contract for the sale or conveyance of real estate, which was in writing, to be recorded, in order to be valid against purchasers for value and without notice, and creditors of the vendor. It was consequently held in *Floyd* v. *Harding* that a purchaser of land under a parol contract who had paid the purchase money and had been put into possession, held a valid equitable title to the land which was not subject to the lien of a judgment against the vendor. The result of this decision and those following it was the enactment of section 5192 in, substantially, its present form, requiring every contract for the conveyance or sale of real estate, in order to be valid as to innocent purchasers and creditors of the vendor, to be in writing, and admitted to record.

We have been unable to find any case in Virginia, nor has any case been pointed out to us, in which the operation of the statute has been extended to contracts embodied in valid decrees entered by courts of equity. We do find, however, several somewhat analogous cases in which it was held to the contrary.

In *Trout's Admr.* v. *Warwick*, 77 Va. 731, the court directed Warwick, who was trustee for his wife, to buy, subject to its approval, a home for his wife, at a cost not exceeding $6,000.00, out of funds belonging to her and under the control of the court. The trustee contracted in writing for 240 acres of land at $12,000.00, subject to the court's approval, which contract was reported to the court; but informed the court that only 100 acres of the land at the price of $6,000.00 is to be paid for out of the wife's funds. A deed for the 100 acres was filed with the report of the trustee, whereupon the court confirmed the purchase of said 100 acres of

land and ordered the deed to be filed as *escrow* until the land had been fully paid for. The contract was never recorded, and before the deed was admitted to record judgments were obtained against the vendor of the land.

Upon a suit by the judgment creditors of the vendor to enforce their judgment liens against the land, it was held that, under the circumstances of the case, neither the contract in writing, nor the deed, were within the terms and intendment of the registry act, and that the title of the appellees, which was derived through the court proceedings, was not such a title as was required to be recorded by that act.

In *Briscoe* v. *Ashby, et als.*, 24 Gratt. 454, a tract of land in Fauquier county, which was held in trust for the benefit of a married woman and her children, was, in a suit for the purpose, decreed to be sold and the proceeds invested in other lands for the benefit of the beneficiaries of the trust, and the sale was made and confirmed. Afterwards a petition was filed in the suit by the beneficiaries asking that the trust fund be applied to the purchase of a tract of land in Culpeper county, whereupon the court appointed a trustee, directing him to purchase the land in Culpeper county and take a deed to himself upon the tract which applied to the land in Fauquier county, and which had been sold. The trustee purchased the land in Culpeper out of the proceeds of the Fauquier land in his own. name, but never received a deed for it. Afterwards the trustee sold and conveyed the land to T., who sold it to B. Upon a petition filed in the proceedings in the Culpeper suit, in which the land in that county had been sold, by the beneficiaries of the trust fund, T. and B., who had purchased the land from the trustee, claimed to be purchasers for value and without notice.

Upon these facts it was held that it was not necessary
to record the decree of the Circuit Court of Fauquier
county in Culpeper to protect the beneficiaries of
the trust fund against the claims of T. and B. as pur-
chasers for value, nor was the decree of the Fauquier
court such a decree as was necessary to be recorded
under the registry acts; that. the title of the benefi-
ciaries was founded upon the proceedings of a court of
chancery and was not within the terms of said act.

In *Dabney & Wife* v. *Kennedy,* 7 Gratt. 317, there
had been a suit by a husband and wife against the
executor of the wife's father to obtain possession of her
property, and a decree was entered therein directing
the executor to deliver the property to the husband
and wife, to be held by them subject to the uses and
stipulations of a marriage agreement entered into by
them before marriage, but unrecorded.

It was held that the said decree did in effect set up
and execute the marriage agreement; the marital
rights of the husband was thereby intercepted; and
the property taken and received by virtue of said
decree, was therefore held by the husband and wife
as trustees under the said decree for the purpose of the
said agreement; and not by the husband in his charac-
ter as husband alone. It was also held that the validity
of the decree was not impaired by the failure to record
it in the county where the property was situated or
the parties resided; and the rights acquired in virtue
of the decree were good and valid against the subsequent
creditors of the husband.

[15, 16] In the case here, upon the application of the
wife in the divorce suit for alimony, suit money and
"other relief," the parties came before the court and
laid before it a compromise agreement which they had
entered into for the settlement of alimony and prop-

erty rights; whereupon the court, as it had a right to do, approved and adopted the agreement, and incorporated it in its decree. The act of placing the agreement before the court was the act of the parties; the act of approving the agreement, and of setting it out in the decree, were acts of the court; and such rights as are vested in Mrs. Barnes and her children under the decree was by virtue of the judicial sanction and determination of the court, and not by the act of the parties in laying the agreement before it. Taking into consideration the history and purpose of the statute, its commonly accepted application from the time of its first enactment, and the cases in which it has been held not to apply, we are of opinion that the application of the registry statutes was not intended, nor should be extended to the decrees in controversy in this case, and that the rights acquired by the wife and children by virtue of those decrees are not subject to the subsequent attachment lien of the creditor of O. O. Barnes, under the provisions of sections 5192 and 5194 of the Code. Nor can it matter whether the agreement was or was not in writing. The terms and conditions of the contract being set forth in the decree itself and being approved by the court, it is surely as solemn and binding as it would have been if incorporated in a separate document and filed with the record. It has been said that judgments and decrees are contracts of the highest character (*Robert's Admr. v. Cooke,* 28 Gratt. 222), and especially is this so when entered by consent as appears, and seems to be conceded, to have been the case in this instance.

[17] A consent decree is a contract or agreement between the parties to the suit, entered of record in the cause with the consent of the court, and is binding unless secured by fraud or mistake. *Morris* v. *Peyton,*

29 W. Va. 201, 11 S. E. 954; *Darraugh* v. *Blackford*, 84 Va. 509, 6 S. E. 542; *Bank* v. *McVeigh*, 32 Gratt. 530; *Pates* v. *St. Clair*, 11 Gratt 22; *Hounsdel* v. *Hounsdel*, 116 Va. 675, 82 S. E. 689; 15 R. C. L. pp. 643, 644; Cor. Jur. p. 133.

[18] The next question to be determined is what right or estate was vested in Mrs. Barnes and her children by virtue of the decrees. It seems indisputable that as the court had jurisdiction to approve the agreement, as it did, such approval could have no less effect than to give them the right, in the absence of fraud, collusion, or imposition upon the court, to enforce compliance with the terms of the agreement in the proper proceedings in the proper forum, and that they were thereby vested with an equitable interest in the real estate in controversy, which, not being within the operation of the registry statutes, is superior to the lien of the attachment in this case. The statute itself (section 6407 of the Code) provides that:

"Any person may file his petition, at any time before the property attached as the estate of the defendant is sold, * * * * disputing the validity of the plaintiff's attachment thereon, or stating a claim thereto, or an interest in or lien on the same, under any other attachment, or otherwise, and its nature, and upon giving security for costs, the court, without any other pleading, shall inquire into such claim, or, if either party demand it, impanel a jury for that purpose, and if it be found that the petitioner has title to, or a lien on, or *any interest* in such property, or its proceeds, the court shall make such order as may be necessary to protect his rights * * * ." (Italics supplied.)

[19] The evident purpose of this statute was to protect the equitable as well as the legal rights and

interests of third persons in the attachment proceedings, and that the lien of the attaching creditor should be subordinated to all such rights and interests as exist at the time the attachment is levied. After the entry of the decree in this case, Barnes only held the bare legal title to the property as trustee for his wife and children, and the familiar doctrine stated by Judge Burks in *McClanahan's* v. *N. & W. Railway Co.,* 122 Va. 705, 96 S. E. 453, which has been invoked in so many cases of like character, applies with full force in this case. Quoting from the case of *Sydnor* v. *Martin,* 17 W. Va. 276, 41 Am. Rep. 670, he states:

[20] " 'It may therefore be laid down as a universal rule, established by many cases, that a judgment lien is always subject to every possible description of equity held by a third party against the debtor at the time the judgment attached; and that it is immaterial whether the rights of such third party consists of an equitable estate or interest in the judgment debtor's land, an equitable lien on his land, or a mere equity against the debtor which attaches to or affects his land. Nor is it at all material whether the judgment debtor has or has not, when he contracted his debt or obtained his judgment or docketed the same, notice of such equitable estate, equitable lien, or mere equity. If they be prior in time to the judgment, they will always be preferred to the judgment lien. The authorities we have cited abundantly sustain this conclusion; and there is no exception to this universal rule, except where such exceptions has been made by some statute law.' " *Van Nostrand & Co.* v. *Va. Zinc & C. Cor.,* 126 Va. 131, 101 S. E. 65.

[21, 22] It is also contended that the subsequent reconciliation of the parties and the decree of January 2nd revoking the divorce from bed and board, also

revoked the settlement of property rights and alimony approved by the preceding decrees. Section 5115 of the Code expressly authorizes the court to revoke a decree of divorce from bed and board "under such regulations and restrictions as the court may impose." It appears from the agreed statement of facts and the pleadings in this case that Mrs. Barnes refused to join in the petition for revocation of the divorce, except upon the express condition that the settlement of property rights made by the former decrees should not be disturbed; and the decree of January 2nd, entered in accordance with the petition filed by the parties, only revoked "so much of the decree of October 4th as granted a divorce *a mensa et thoro*." It thus plainly appears from the decree itself, as well as from the pleadings and evidence in this case, that it was not the intention of either of the parties or of the court to interfere with, or cancel, the contract which had previously been entered into, and which in effect constituted a postnuptial settlement on the wife and children. The question of whether the wife and children have forfeited their rights under the agreement depends not only upon the terms of the agreement itself, but upon the situation and conduct of the parties as indicating their intention to avoid it. We think this question can only arise between the parties themselves, and cannot be determined here, but conceding that the attaching creditor has the right to attack the decrees on that ground, the general rule may be stated to be that a postnuptial settlement or agreement made when the parties are already separated or while a divorce suit is pending between them, as a matter of law, is not abrogated by the subsequent reconciliation of the parties. In a comprehensive note to *Dennis v. Perkins* (88 Kan. 428), 129 P. 165, 43 L. R. A. (N. S.)

1219, the annotator draws a distinction between mere separation agreements and separation of postnuptial settlements, saying:   "If the agreement goes further and amounts to a postnuptial separation settlement" (as is the case here) "it is not terminated, as a matter of law, by such coming together of the parties;" and he quotes a number of decisions to sustain that statement of the rule.

Thus, a separation agreement is not abandoned by a mere conditional, experimental, and temporary living together of the parties, without any intention to abandon the agreement, and without a return of the parties to their original situation as husband and wife, bound to live together in the domestic relation. *Alleman* v. *Alleman*, 2 Dauphin Co. Rep., p. 209.   And a contract entered into between husband and wife upon the institution of divorce proceedings by the wife, who had left the husband, whereby, in consideration of a certain sum, the wife acknowledges satisfaction and payment of all claims against her husband of every kind for alimony, support, and maintenance, and releases all interest, right and title in all the husband's property, is not abrogated by the husband's subsequently receiving the wife back into his home and supporting her, and living with her, by cohabitation, as his wife. *Bulke* v. *Bulke*, 173 Ala. 138, 50 So. 490; *Huntley* v. *Huntley*, 41 N. C. 514.

In *Savage* v. *Savage*, 141 F. 346, 72 C. C. A., 3 L. R. A. (N. S.) 923, it was held that remarriage of the parties does not invalidate a contract by which a divorced man agrees to allow his former wife an annuity, to be secured by a trust deed on real estate, in lieu of alimony allowed her by a decree of divorce, from the lien of which his property is to be released, and as a marriage settlement; and the wife is not, be-

cause of her marital relation, to be postponed to other creditors of her bankrupt husband, where the statute provides that a married woman shall have the right to acquire, hold and dispose of property as if she were unmarried. This case arose in Virginia, where the parties lived and the property was situated.

"Notwithstanding the court has power and authority to modify its decree of divorce touching the allowance of the sum of money for the maintenance of the wife, yet, nevertheless, she and her husband may agree in a proper case touching the amount of such sum and the manner of its payment, subject to the approval of the court as to its validity in good morals and as conformable to public policy, and in further consideration of the status and condition of the parties relating to the question of its fairness and equibility of adjustment. The authorities generally hold that when such an agreement has been approved by the solemn decree of the court, it becomes forever binding, to the same degree and with like effect as ordinary contracts between parties admitedly *sui juris,* and is not subject to revocation or modification except by consent of the parties thereto. * * * * The court cannot alter or modify the decree, insofar as it is based on the contract of the parties, for such a modification of the decree would be no less than a modification of the contract itself." 1 R. C. L. pp. 947, 948. *Emmerson* v. *Emmerson, supra.*

[23] Further complaint is made that if the decree of January 2nd is not construed as a complete revocation of the preceding decrees, the effect will be to allow the husband, who was previously indebted, to transfer to his wife property which should be liable to his debts. The answer to this is, that there is no charge that there was fraud or collusion on the part of the

parties in the divorce proceedings. The attachment was sued out upon the sole ground that O. Q. Barnes was not a resident of the State. Nor is any evidence of fraud produced in these proceedings beyond the mere fact that Barnes was indebted to the fertilizer company at the time the divorce decrees were entered. The consideration of the agreement between Barnes and his wife was a settlement of property rights, claims for alimony and suit money, and release of the wife's contingent right of dower. This constituted a valuable consideration, and the transaction, therefore, is not *prima facie* fraudulent. In *Savings Bank* v. *Todd,* 114 Va. 708, 77 S. E. 446, where a creditor of the husband sought to set aside a postnuptial settlement on his wife, which is shown to have been founded upon a valuable consideration, it was held that the burden is upon the creditor to show that the settlement was excessive—so excessive as to raise a presumption of fraud.

There is no evidence in this case to show that the settlement was excessive, nor was there any effort on the part of the creditor to show any other circumstances of fraud or collusion, as it had a right to do, if it could, and the matter had been put in issue by the pleadings. *Michaels* v. *Post, supra.* The creditor seems to have relied entirely upon the alleged invalidity of the decrees and the subsequent reconciliation of the parties.

Upon the whole case we are of the opinion that the decrees in the divorce suit vested in Mrs. Barnes and her children an equitable interest in the real estate in controversy, which is superior to the lien of plaintiff's attachment in this case, and for the foregoing reasons the judgment of the circuit court should be reversed.

*Reversed.*