# Harry Clark

## v.

# Butler Aviation - Washington National, Inc.

Record No. 881317

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

\* Justice Thomas participated in the hearing and disposition of this case prior to the effective date of his resignation, November 1, 1989.

*Metin A. Cay (Ashcraft & Gerel*, on brief), for appellant.
*John A. Maddox (Roger P. Furey; Arter & Hadden*, on brief), for appellee.

Chief Justice Carrico delivered the opinion of the Court.

On March 27, 1985, Harry Clark was injured when the motor vehicle he was operating collided with a vehicle being driven by Alan Murphy, an employee of Butler Aviation — Washington National, Inc. (Butler). On March 25, 1987, two days before the two-year statute of limitations was due to run on his claim, Clark filed a motion for judgment against Murphy and Butler seeking damages for his injuries.

On March 21, 1988, Clark requested that service of process be perfected on Butler. The process was not served, however, until April 5, 1988, more than one year after the date the motion for judgment was filed. Thereupon, Butler moved to quash service of process.

Prior to any action on the motion to quash, Clark moved for a voluntary nonsuit, which was granted by an order entered May 31, 1988. Then, on June 23, 1988, more than two years after the accident occurred, Clark recommenced his action by filing another motion for judgment asserting the same claim. Process was served upon Butler a week later. Butler responded with a plea in bar, asserting that Clark's claim was barred by Rule 3:3 of the Rules of this Court and the two-year statute of limitations set out in Code § 8.01-243.

The trial court sustained Butler's plea in bar and, by order entered October 14, 1988, dismissed Clark's motion for judgment with prejudice. Whether the trial court properly sustained the plea is the sole question on appeal.

Rule 3:3, Code §§ 8.01-380 and 8.01-229(E)(3), Article VI, Section 5 of the Constitution of Virginia, and Code § 8.01-3 are at the heart of this controversy. In pertinent part, Rule 3:3 provides:

> No judgment shall be entered against a defendant who was served with process more than one year after the commencement of the action against him unless the court finds as a fact that the plaintiff exercised due diligence to have timely service on him.[1]

Code § 8.01-380 provides in pertinent part:

> **Dismissal of action by nonsuit.**—A. A party shall not be allowed to suffer a nonsuit as to any cause of action or claim . . . unless he does so before a motion to strike the evidence

---

[1] Clark does not rely upon the "due diligence" exception to Rule 3:3.

has been sustained or before the jury retires from the bar or before the action has been submitted to the court for decision. . . .

B. Only one nonsuit may be taken to a cause of action . . . as a matter of right. . . .

As pertinent here, Code § 8.01-229(E)(3) provides:

If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date of the order entered by the court, or within the original period of limitation, . . . whichever period is longer. . . .

Article VI, Section 5 of the Constitution of Virginia reads as follows:

**Rules of practice and procedure.** — The Supreme Court shall have the authority to make rules governing the course of appeals and the practice and procedures to be used in the courts of the Commonwealth, but such rules shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly.

Finally, certain portions of Code § 8.01-3 are pertinent to this discussion:

A. *Supreme Court to prescribe rules.* — The Supreme Court . . . may, from time to time, . . . make general regulations for the practice in all courts of the Commonwealth . . . and may prepare a system of rules of practice. . . .
. . . .

D. *Effect of subsequent enactments of the General Assembly on rules of court.* — The General Assembly may, from time to time, by the enactment of a general law, modify, or annul any rules adopted or amended pursuant to this section. In the case of any variance between a rule and an enactment of the General Assembly such variance shall be construed so as to give effect to such enactment.

Clark contends that "[i]t is obvious [the trial court's] decision has placed Rule 3:3, § 8.01-229(E)(3) and § 8.01-380 in conflict." The result, Clark maintains, "is to totally invalidate the one nonsuit given as a right by the General Assembly pursuant to [Code § 8.01-380 and] 8.01-229(E)(3)." This result, Clark concludes, "is impermissible under §8.01-3 . . . and Article VI, § 5 of the Constitution of Virginia."

Butler does not acknowledge the existence of either Article VI, Section 5 of the Constitution or Code § 8.01-3. Butler strives mightily, however, to show there is no conflict between Rule 3:3 and Code §§ 8.01-380 and 8.01-229(E)(3). Rather, Butler maintains, the Rule and the statutes are "independent, yet compatible," serving different requirements and imposing different limitations.

Butler says that Rule 3:3 requires timely notice of the pendency of an action while Code § 8.01-380 specifies the conditions under which a nonsuit may be taken. And Code § 8.01-229(E)(3), Butler submits, merely provides "a mechanism for the tolling of the statute of limitations by a plaintiff who complies with all other procedural requirements, including the timely service requirement found in Rule 3:3."

Butler argues that Rule 3:3 provides "a restriction on [a] plaintiff's privilege to refile a nonsuited action," barring a plaintiff who nonsuits an action from thereafter obtaining a judgment against a defendant who was not served with process within one year of the filing of the original action. This bar, Butler maintains, "is no less complete than the bar which results when a plaintiff fails to comply with the statute of limitations, or the requirements of the tolling statute."

Butler points out that Rule 3:3 was adopted prior to 1977. Butler then argues that the General Assembly's enactment of Code § 8.01-229(E)(3) in 1977 did not "expressly or by implied intent . . . change the independent requirement that service be made on [a] defendant pursuant to Rule 3:3." It should be presumed, Butler opines, "that the General Assembly does not intend to change the prior law unless that intention is clearly expressed in the new statute" and, "[u]nless the General Assembly indicates otherwise, revisions to statutes should be construed so as to make the revisions consistent with prior, existing law."

It is impossible, however, to read Rule 3:3 and Code §§ 8.01-380 and 8.01-229(E)(3) in the way Butler reads them

without reaching the conclusion that the Rule does conflict with the statutory provisions. Code § 8.01-229(E)(3) purports to toll the statute of limitations upon commencement of the original action,[2] Code § 8.01-380 purports to give a plaintiff one voluntary nonsuit as a matter of right, and Code § 8.01-229(E)(3) purports to allow the plaintiff six months from the date he suffers the nonsuit to recommence his action.

But, under Butler's interpretation, if process is not served on the defendant within one year after the date of filing of the original action, a nonsuit would be ineffective except to bring an end to that action, the running of the statute of limitations would continue unabated, and the plaintiff's recommenced action would be barred. This interpretation would cause real conflict between rule and statute, sufficient to trigger the application of Code § 8.01-3 and render Rule 3:3 inoperative under circumstances similar to those present here.[3]

■ We think that this conflict can be avoided. In our opinion, the proper resolution of the rule-statute dichotomy created by the differing arguments in this case is that Code § 8.01-229(E)(3) tolled the statute of limitations upon Clark's commencement of the original action. But, because Butler was not served with process until more than one year after such commencement, Rule 3:3 forbade entry of any judgment against Butler in that action, and the action ended with entry of the order allowing a nonsuit pursuant to Code § 8.01-380. However, Code § 8.01-229(E)(3) intervened to give Clark a six-month period after entry of the nonsuit order in which to recommence his action. He recommenced the

---

[2] Rule 3:3(a) provides in pertinent part: "An action shall be commenced by filing in the clerk's office a motion for judgment. The action is then instituted and pending as to all parties defendant thereto."

[3] Butler admitted during oral argument that the result would be the same even though a plaintiff might have a considerable portion of the applicable statute of limitations remaining at the time he files his recommenced action and may not need the additional period allowed by Code § 8.01-229(E)(3) to avoid having a plea in bar sustained against the action. This scenario would equal or exceed the "horror story" Butler predicts would result from the adoption of Clark's version of the interplay between the Rule and the statutes involved in this case, viz., that a "defendant might not receive notice of plaintiff's claim until almost eight and one-half years after plaintiff's cause of action accrued." We are confident, however, the General Assembly did not intend that the interaction of Code § 8.01-229(E)(3) with Rule 3:3 would result in the dismissal with prejudice of an otherwise unbarred claim, and we are certain this Court did not intend such an unlikely result when it adopted Rule 3:3.

action within the allowed period and thus insulated his claim against a plea of the statute of limitations.[4]

This analysis avoids any conflict between rule and statute and permits the two to work alongside each other in what we believe is a harmonious manner fair to both sides. In any event, we think it is the manner in which the two are intended to operate, and we are duty-bound to give full effect to that intent.[5]

For the reasons assigned, the judgment of the trial court will be reversed, Clark's motion for judgment will be reinstated, and the matter will be remanded for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*

---

[4] We reach this conclusion whether the second filing is considered a new action, as Clark contends, or merely a recommencement of the original action, as Butler contends.

[5] Butler warns that a decision adverse to its position would result in a denial of due process of law. Butler argues that it had "a justifiable expectation that it [was] protected by the time limits of the applicable statute of limitations and Rule 3:3" and that "[o]nce the time limits . . . expired, [its] right to assert the statute of limitations and Rule 3:3 as a defense [became] a vested right, fully protected under the due process clauses of the Virginia and United States Constitution[s]." We think, however, that when Clark suffered the voluntary nonsuit, he too had "a justifiable expectation," *viz.*, that he would be entitled to the benefit of the six-month period allowed by Code § 8.01-229(E)(3) in which to recommence his action. If both postulates are accepted, "[t]he obvious result . . . would be a complete legal standoff." *Marriott v. Harris*, 235 Va. 199, 210-11, 368 S.E.2d 225, 230 (1988). As indicated in the text, we accept Clark's postulate and avoid the standoff.