## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Nancy R. Hicks

v.

Sarah Rebecca Harrison et al.

November 18, 1994

Case No. L-94-284

BY JUDGE WILLIAM H. LEDBETTER, JR.

This case is before the court on the defendants' plea of the statute of limitations. The plea implicates the nonsuit statute and the one-year service requirement of Rule 3:3. Arguments were heard on October 17, 1994, and the matter was taken under advisement.

### Facts

This action arises from personal injuries the plaintiff sustained in an automobile accident on January 1, 1987. (The motion for judgment incorrectly states January 1, 1986, but that inaccuracy is of no consequence to this decision.)

The parties agree that the two-year statute of limitations concerning actions for personal injuries applies here.

On December 29, 1988, three days before the period of limitations was to expire, the plaintiff instituted an action (# L-88-682) against these defendants. The defendants filed responsive pleadings. On August 6, 1990, the plaintiff suffered a voluntary nonsuit. The defendants did not object, and their attorneys endorsed the nonsuit order.

On December 26, 1990, the plaintiff instituted a second suit (# L-90-940) against the same defendants on the same cause of action. The defendants were not served. In fact, counsel for the plaintiff instructed the clerk: "do not serve upon the defendants at this time." No service fees were

paid, and no service of process was ever attempted. On February 7, 1992, pursuant to a periodic review of stale cases, the court reminded counsel for the plaintiff that the defendants had not been served and that something should be done to remove the case from the docket. Eventually, the clerk issued a notice pursuant to Virginia Code § 8.01-335 advising plaintiff's counsel that the case would be stricken on July 18, 1994, except for good cause shown.

On July 15, 1994, plaintiff's counsel tendered and the court entered a voluntary nonsuit order endorsed by plaintiff's counsel.

The present action, the third, was commenced the same day the nonsuit was taken in the second case.

This time, the defendants were properly served. They filed responsive pleadings, including the pleas involved in this proceeding.

### Decision

The first case was filed within the two-year period of the statute of limitations. The nonsuit taken in that case, endorsed by all counsel, was taken as a matter of right under Virginia Code § 8.01-380(B).

At the time that nonsuit was taken, the period of limitation had run but for Virginia Code § 8.01-229(E)(3), which extended the limitation period six months from the date of the nonsuit. The second case was filed within that six-month period.

The defendants' plea focuses on the second suit. They point out that the nonsuit in that case was not a matter of right and that plaintiff's submittal of a sketch nonsuit order without notice to the defendants was a violation of due process and a fraud on the court. The court had no way of knowing, they point out, that a previous nonsuit had been suffered because the earlier case file had been closed; and, further, the defendants had no opportunity to bring that circumstance to the court's attention because they received no notice of the plaintiff's intended nonsuit and, in fact, had never been served with process at all.

That brings the defendants to their final argument. Rule 3:3 provides that no judgment can be entered against a defendant who is not served with process within one year after commencement of suit against him unless the plaintiff establishes to the satisfaction of the court that due diligence was exercised in attempting to effect timely service. (Also see § 8.01-275.1 enacted in 1994. But that statute has no effect on this decision.) The defendants contend that the second action (# L-90-940) could not have resulted in a judgment against them because no service was made

or attempted during the three and a half years that that case was pending. It follows, they say, that the second action did not toll the statute of limitations, and it should have been dismissed for noncompliance with Rule 3:3 rather than nonsuited under § 8.01-380.

On the other hand, the plaintiff points out that she was entitled to take the first nonsuit and, she argues, she had a right to submit a sketch order to the court for a second nonsuit (in the second case) without the defendants' endorsements because the defendants had never been served with process and hence were not really "parties" in the case. She further argues that since the second suit was never dismissed under Rule 3:3, that issue is academic.

First, it should be noted that the plaintiff misuses the word "parties" in her argument. Although the defendants were never served with process in the second suit, that does not mean they were not parties to that suit. In legal parlance, a party is a person or entity against whom a suit is brought. *Black's Law Dictionary* (4th ed.) p. 1278. The purpose of service of process is not to make a person a party; he is already a party if he is named in the suit and the suit has been commenced. Rather, the purpose of process is to notify the adverse party of the litigation and to confer upon the court active in personam jurisdiction over him. See Bryson, *Handbook on Virginia Civil Procedure* (2d ed.) p. 97. This meaning of "party" is supported by Virginia's statutory scheme in Title 8.01 where numerous references are made to a "party" even though it is obvious from the context that such person may not have been served with process. See also Rule 3:3(a). Therefore, these defendants were parties to the second suit, even though they were not served and may have been unaware of their involvement in that suit.

That observation does not end the inquiry. Although the defendants were "parties" to the second suit, the court had no in personam jurisdiction over them and had no power to make a binding adjudication on the merits.

Therefore, it is fair to summarize the defendants' status at the time the second suit was nonsuited as follows: they were parties to that suit but were not before the court or subject to its jurisdiction.

In *McManama v. Plunk*, 33 Va. Cir. 348 (1994), a personal injury action was nonsuited one year and two days after suit was filed. The defendants were never served. Thus, the nonsuit order was ex parte. When a second suit was instituted and the defendant was served, the defendant filed a

motion to dismiss. Her argument was similar to the defendants' argument in this case.

In *McManama*, the Roanoke County Circuit Court granted the motion to dismiss. The court held that the ex parte nonsuit order in the first case did not trigger the six-month extension of the period of limitations in Virginia Code § 8.01-229(E)(3) because the defendants were denied due process of law by lack of service of process upon them and the failure to give them notice and an opportunity to be heard on the nonsuit. Hence, the statute of limitations ran before the second action was commenced. The court also pointed out that Rule 3:3 precludes entry of a judgment against a defendant who is not served within one year unless the court finds that the plaintiff exercised due diligence to find him. The plaintiff nonsuited the first action because she had not attempted service within one year, the court observed.

In *Clark v. Butler Aviation*, 238 Va. 506, 385 S.E.2d 847 (1989), the trial court dismissed a second personal injury action after the first action had been nonsuited more than a year after the first suit had been filed. The Supreme Court reversed, holding that § 8.01-229(E)(3) tolled the statute of limitations upon commencement of the first action. Although Rule 3:3 forbade entry of any judgment against the defendant in that action, the plaintiff nonsuited, thereby giving him an additional six months to recommence his action and insulating his claim against a plea of the statute of limitations. In a footnote, the Supreme Court addressed and rejected a due process argument.

It is obvious from *Clark* that noncompliance with Rule 3:3 does *not* always preclude a nonsuit. In other words, if a plaintiff takes a nonsuit before the action is dismissed for failure to serve the defendant within one year, he may refile within the six-month extension provided in § 8.01-229(E)(3). It also appears from the Court's footnoted comments in *Clark* that a due process argument is not persuasive, at least when the defendants knew of the nonsuit. In *McManama*, the defendants were not aware of the nonsuit. Whether a due process argument can be made successfully under those circumstances need not be decided here.

Significantly, there is a twist to the case at bar that distinguishes it from *Clark* and *McManama*. In *Clark*, the plaintiff's nonsuit in question was his *first* nonsuit. By statute (§ 8.01-380(B)), he was entitled to it. That fact may have played a substantial role in the Supreme Court's decision, especially in its rejection of the defendant's assertion that its constitutional right of due process was denied. Here, however, as the defendants empha-

size, the nonsuit in question was the plaintiff's *second* nonsuit, a nonsuit which she clearly had no right to suffer except with leave of court, apprised of the circumstances, or by agreement of all the parties.

The question in this case, then, is narrowed to this: can a plaintiff properly suffer a *second or additional nonsuit*, one to which he has no statutory entitlement, by presenting to the court a nonsuit order more than one year after filing the action and without attempting to serve the defendants, and without giving the other parties an opportunity to be heard?

The court is of the opinion that the answer to the question is in the negative. Under the particular circumstances of this case, the second nonsuit had no effect as to the defendants. To explain this result, a brief review of the law of nonsuit is worthwhile.

At common law, a plaintiff could bring a lawsuit to an end at any time before verdict (or, at least before the jury retired from the bar to deliberate its verdict) by suffering a nonsuit. The effect was simply to put an end to the present action but was not a bar to a subsequent action for the same cause. Theoretically, a plaintiff could suffer as many nonsuits as he wished. As a practical matter, however, the number of nonsuits a plaintiff could take was limited by the statute of limitations because the pendency of an action that was nonsuited did not affect (i.e., did not toll) the running of the statute of limitations.

The nonsuit was distinguished from a "retraxit," by which a plaintiff voluntarily renounced his suit and withdrew. A retraxit not only terminated the action but barred all other actions for the same cause. Burks, *Common Law Pleading and Practice* (4th ed. 1952) pp. 644-647; Bryson, *Handbook on Virginia Civil Procedure* (2d ed. 1989) pp. 437-439; generally, 6A M.J., *Dismissal, Discontinuance and Nonsuit.*

The right to nonsuit has been codified in Virginia, eliminating for the most part whatever discretion the court may have had to permit a plaintiff to suffer at least one nonsuit while limiting the circumstances under which a nonsuit, especially additional nonsuits, may be taken. Virginia Code § 8.01-380. These limitations, some authorities note, provide a necessary quid pro quo for the statutory deviation from common law whereby the statute of limitations is tolled during the pendency of the nonsuited action and for six months thereafter. § 8.01-229(E). In other words, without some restrictions on nonsuits, the statutory tolling provisions would make it possible for a plaintiff to file action after action, nonsuiting each one in turn, ad infinitum, until in his sole discretion, he chooses to proceed to

verdict with his case. Such vexations and unconscionable delays were not possible at common law for the reason explained.

It follows that the courts must construe and apply the statutory limitations on additional nonsuits in a fair and realistic manner, mindful of the historical right of a plaintiff to suffer nonsuit without prejudicing his ability to bring another action on the same claim, within limits, while also mindful of a defendant's justifiable expectation that the claim be resolved or withdrawn, with finality, within a reasonable time.

Accordingly, the court holds that in order for a plaintiff to suffer an *additional* nonsuit, i.e., one to which he has no statutory entitlement, the record must show that all parties agreed to it or the adverse parties were given fair opportunity to oppose it so that the court could make an informed determination whether to allow the plaintiff to take the nonsuit. Without such consent or opportunity to be heard, or without at least the court being informed of the circumstances so that it can make a meaningful determination whether to allow the additional nonsuit, the nonsuit is ineffectual.

A second compelling rationale exists for this result. It is settled that a second or additional nonsuit taken without consent of the defendants or the court is in substance a retraxit. See Bryson, *supra*, p. 438. Consent is an act of reason, the mind weighing as in a balance the good and evil on each side. It means voluntary agreement, acquiescence, or concurrence by someone in possession of such facts to make an intelligent choice to do something proposed by another. *Black's Law Dictionary* (4th ed. 1951) p. 377. Under the circumstances of this case, the Court did not consent to an additional nonsuit. A retraxit bars another action on the same cause. Thus, the third action, i.e., the present case, is barred.

(This case illustrates as good as any the prejudice to defendants if the rule were otherwise. When the plaintiff nonsuited her original action in August of 1990, the defendants were on notice that the plaintiff could recommence her action within six months. Thus, for six months more they remained subject to answer for their alleged negligence that caused the plaintiff's injury in January of 1987. When those six months expired and they heard nothing, they had a reasonable expectation that the plaintiff had decided not to pursue the matter. When the present action was filed and served on them last summer, they were understandably surprised that a 7½-year-old personal injury claim was being resurrected against them. Of course, they did not know, until subsequent inquiry, that an intervening suit had been filed against them in late 1990 and had languished on the

docket, with no service of process, for four years until the plaintiff withdrew it.)

For the reasons explained, the defendants' plea will be sustained and the case dismissed with prejudice.