## CIRCUIT COURT OF AUGUSTA COUNTY

Willard Shannon Branch

v.

Augusta Health Care, Inc.,
Brian R. Baker,
and Samuel A. Hostetter

August 21, 2015

Case No. CL14000639-00

By Judge Victor V. Ludwig

This matter is before the Court on the "Petition" (the Complaint)[1] filed by William Shannon Branch, the Special Appearance and Motion To Dismiss and for Sanctions (Baker's Motion) filed by Brian R. Baker, M.D., the Plea of the Statute of Limitations (Hostetter's Plea) filed by Samuel A. Hostetter, M.D., and the Plea of the Statute of Limitations (AHC's Plea) filed by Augusta Health Care, Inc. (AHC).

This medical malpractice case is the latest iteration of a suit arising out of Branch's allegation that the defendants failed to diagnose his spinal stroke in April of 2009. Branch has managed to keep this claim alive three times

---

[1] In light of the language of Rule 3:2 of the Rules of the Supreme Court of Virginia (which prescribes that civil actions shall be initiated by a complaint) or even the more antiquated term "motion for judgment" (described in Va. Code Ann. § 8.01-20.1), it is not clear why Branch characterized his pleading as a "petition," but, given the language of the Rule, I will use "Complaint" when referring to his pleading.

longer than the statutory limit[1] through a protracted series of last minute filings and nonsuits. He began ascending this teetering extension ladder of a procedural history with the filing of his initial suit March 30, 2011. On his motion, the Court dismissed the first suit by order of nonsuit just shy of a year later on March 28, 2012. (Case No. CL11000416-00) He revived it on September 26, 2012, only to have the Court dismiss it, again, by order of nonsuit on September 26, 2013. (Case No. CL12001225-00) Although Branch was required to notify the defendants of his intent to seek a second nonsuit order (a fact, candidly and with some embarrassment, overlooked by the Court), he failed to do so. His only attempt to serve the defendants with process in any of the suits came nearly one year after — and as to Baker, one year and sixteen days after — he filed this present action on March 21, 2014.

All three of the defendants claim that Branch's chain of delaying actions contains a defective link fatal to this case's continuance. Hostetter and AHC, in separate, but largely identical pleas of the statute of limitations, claim to have identified a defect in the second nonsuit order that makes this case time barred. In Baker's Motion, he asserts a defect in Branch's service of process and further argues that Branch could not in good faith argue that he believed his attempt at service would be effective. *See* Va. Code Ann. § 8.01-277(B).

## I. *Baker's Motion To Dismiss*

Baker attacked only the third lawsuit which Branch has filed, a suit which the other defendants attack on the basis of its having been filed beyond the statute of limitations. Because Baker does not raise that issue, the Court will address his motion on the assumption that the suit was properly filed within the limitations period.

I turn first to Baker's motion to dismiss on the basis of defective service or late service of process. His motion is in the nature of a plea in bar. "[A] plea in bar is a defensive pleading that reduces the litigation to a single issue," *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, (1992), "which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie,* 251 Va. 478, 480 (1996).

Branch effected service of process on Baker through the Secretary of the Commonwealth, pursuant to Va. Code Ann. § 8.01-329.

For reasons not entirely clear to the Court, Baker supposes that Branch was seeking service pursuant to Va. Code Ann. § 8.01-326.1. His misapprehension in that regard certainly could be predicated on the inconsistent and misleading language in the form affidavit which Branch filed. Having clearly stated that the recipient is "being served . . . under

---

[1] The statute of limitations for a medical malpractice claim is two years. Va. Code Ann. § 8.01-243.

Section 8.01-329 of the Code of Virginia," and having further stated that "legal service was made on the Secretary of the Commonwealth," it goes on to state that "service of process is effective on the date that the certificate of compliance is filed with the above-named court." Although the latter statement is an accurate one were service effected pursuant to § 8.01-326.1, it is inaccurate with respect to service pursuant to § 8.01-329.

(I note that the statutory references on the form (in the lower left-hand corner) do not even include § 8.01-326.1. Perhaps someone should notify the Secretary of the Commonwealth that the form is misleading, although I will not undertake to try to move that bureaucracy.)

Service of process on the Secretary of the Commonwealth requires that the party seeking service file an affidavit with the court "stating either (i) that the person to be served is a nonresident or (ii) that, after exercising due diligence, the party seeking service has been unable to locate the person to be served. In either case, such affidavit shall set forth the last known address of the person to be served." *Id.*

Baker argues briefly, as a preliminary matter, that Branch's service was defective because Branch requested service at the address of a hospital in Maryland where Baker works, not at Baker's home address. *See* Baker's Motion ¶ 4. Baker further argues that this means of service was especially ineffective because Baker is employed by a corporation that provides emergency room services to the hospital, not by the hospital itself. *Id.,* at n. 3.

Unless a defendant has received personal service of process (which cures any irregularities), "if a statute provides for constructive service, the terms of the statute authorizing it must be strictly followed or the service will be invalid." *Khatchi v. Landmark Restaurant Assocs.*, 237 Va. 139, 142 (1989). Baker contends that the requirement of § 8.01-326.1 (to send service to the "last known post office address") means that service must be sent to a home address. Baker's Motion ¶ 4. Presumably, Baker would have made the same argument had he recognized the statutory section pursuant to which Branch was seeking service.

An obvious defect in Baker's argument on this point is that, although given the opportunity to do so, he did not offer any evidence on the issue, and on his plea, he had the burden of proof. Unless the parties stipulate the facts, the party asserting the plea in bar bears the burden of proof on the issue presented. *Cooper Indus., Inc. v. Melendez,* 260 Va. 578, 594 (2000); *Tomlin,* 251 Va. at 480; *see also e.g., Kroger Co. v. Appalachian Power Co.,* 244 Va. 560 (1992). Unlike the circumstance in *Kroger,* there was no offer or suggestion of stipulated facts in the pending case. All the Court has is the affidavit which is attached to Baker's plea, and it states what Branch asserted was Baker's last known address, and there was no evidence to the contrary.

Even if Baker had offered evidence that 2011 Medical Parkway, Annapolis, Md., was not his home address, I am bound to follow "the plain, obvious, and rational meaning of a statute" instead of "any curious, narrow or strained construction." *Virginia Polytechnic Inst. & State Univ. v. Prosper Fin., Inc.*, 284 Va. 474, 481 (2012) (quoting *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007)). Limiting "last known address" to home addresses would be a narrow construction of the statute unsupported by relevant case law. In *Virginia Polytechnic*, the Virginia Supreme Court found the use of a post office box address sufficient to effect service, even though the plaintiff knew a physical address of the corporation it intended to serve. *Id.* at 482–83. In support of its conclusion, the Court cited the United States Supreme Court's determination that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action. . . ." *Id.* at 482 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950)). Section 8.01-329 does not require the plaintiff to find the single best address, but only the one last known.

Assuming (without accepting, because of the lack of evidence) the accuracy of Baker's allegations, mailing the service to Baker's place of employment is a reasonably calculated effort to reach him, regardless of whether the hospital actually signs his paychecks. In his motion, Baker acknowledged that he works for a corporation which "provides emergency room services to the hospital." Baker's Motion, ¶ 4, at n. 3. This is borne out by the fact that the service mailed to the hospital did eventually reach Baker. Baker's Motion ¶ 4 at n. 6. Whatever defects exist in the method of service, and I find none here, this actual delivery would make Branch's service sufficient. *See* Va. Code Ann. § 8.01-288.

However, the sufficiency of Branch's method of service on Baker, along with the fact that the summons and complaint actually reached him, is irrelevant if it did not reach him (or his statutory agent) within the time period prescribed by law. Section 8.01-288 only allows actual service effected within the statutory timeframe to cure defects in the service process. Va. Code Ann. § 8.01-288. Service of process must occur within one year after the initiation of a suit. Va. Code Ann. § 8.01-275.1; Va. Sup. Ct. R. 3:5. In this case, Branch had until March 21, 2015, to serve Baker. Because March 21 fell on a Saturday, that time was extended to March 23. Va. Code Ann. § 1-210. Although service was "effective on the date when service [was] made on the Secretary," Va. Code Ann. § 8.01-329(C), that did not occur until March 25, 2015, two days after the extended period. *See* Affidavit of Service of Process on the Secretary of the Commonwealth of Virginia (the Affidavit). Hence, Branch did not serve Baker within the one year timeframe required by law.

Even this determination does not end the inquiry. Recognizing the possibility that even the most attentive attorney could fail to serve defendants within the one year limit for various, valid reasons, the General

Assembly saw fit to allow plaintiffs to serve process beyond one year when the plaintiff had exercised "due diligence." Va. Code Ann. § 8.01-275.1; Va. Sup. Ct. R. 3:5(e). The Virginia Supreme Court has interpreted due diligence to be an exacting standard, finding that nothing short of a "painstaking and devoted" effort to effect service within the one year limit will qualify for an extension pursuant to § 8.01-275.1. *Dennis v. Jones,* 240 Va. 12, 19 (1990).

Branch offered no evidence to suggest why the Court should find that he exercised due diligence in his effort to serve Baker with process. The only evidence on record is that Branch signed the Affidavit on March 20, 2015, one day before the statutory deadline (with no evidence even when it was mailed). Viewed in isolation, which is the only way I can view it, as Branch did not offer any evidence to contextualize his eleventh hour attempt, this lone, last minute effort is not a "painstaking and devoted" attempt to serve Baker. On the contrary, such a solitary, delayed stab at service smacks much more of a hasty and half-baked effort. That is not an exaggeration; the Affidavit was completed with such a lack of care that the block describing what Branch was attaching showed that it was a "Garnishment Summons," not a "Summons and Complaint." Though I can imagine a scenario in which Branch engaged in a fruitless yearlong manhunt for Baker and dispatched his request to the Secretary of the Commonwealth only as a last resort, that scenario must remain in my imagination, as Branch has offered no evidence of any efforts to reach Baker in the 363 days before he signed the affidavit.

Branch did not serve Baker within one year after filing his suit, and this failure did not occur after a duly diligent attempt. His service of process on Baker is defective and the claim against Baker is dismissed with prejudice.

## II. *Motion for Sanctions*

Baker further asserts that Branch violated Va. Code Ann. § 8.01-271.1 because, he claims, Branch lacked a good faith reason to make his request for service. *See* Baker's Motion ¶ 10. Without ever using the term, Baker presumably asks the Court to impose sanctions in the form of reasonable attorney's fees and the cost of filing his motion to dismiss. *Id.,* ¶ 11.

Section 8.01-271.1 calls for the Court to impose sanctions when an attorney signs a pleading, written motion, or other paper that is not warranted by existing law or supported by a good faith argument for the extension, modification, or reversal of existing law to the best of the attorney's knowledge, information, and belief after a reasonable inquiry. Va. Code Ann. § 8.01-271.1. Without concluding that the affidavit (Form CC-1418) which Branch used to initiate the process of serving Baker was a pleading, written motion, or other paper contemplated by § 8.01-271.1 but assuming that it is, the record indicates that Branch signed the Affidavit on March 20, 2015, one day short of the statutory limit of one year. Baker has provided no authority that the statute is of sufficient scope to include an affidavit of this nature. Even giving Branch the benefit of the doubt

that he mailed it the same day, the preliminary question is whether or not Branch could have formed a reasonable belief, after a reasonable inquiry, that mailing the Affidavit was warranted by law; in other words, if it was reasonable to believe the Affidavit would effect service on Baker within the prescribed time. Given that service would have been effective (absent all other considerations), I conclude that Branch might have (despite the fact that he was relying on the United States Postal System) concluded that the letter could have been delivered on the following Monday. It used to happen all the time. Times have changed.

Even if it were otherwise, Baker presented no quantification of damages to support his claim.

Branch's signing the Affidavit cannot support Baker's claim for sanctions.

### III. *Pleas of the Statute of Limitations*

Determining whether or not the statute of limitations has elapsed in this case depends on the validity of the second nonsuit order entered September 26, 2013. Branch's first nonsuit was his to take as a matter of right, and no party disputes its validity. *See* Va. Code Ann. § 8.01-380(B). Nonsuits "taken as prescribed in § 8.03-380," as Branch's first nonsuit undoubtedly was, toll the statute of limitations for an additional six months. Va. Code Ann. § 8.01-229(E)(3). The time for re-filing Branch's case would have expired on September 28, 2012. Va. Code Ann. § 8.01-229(E)(3) allows cases following nonsuits to be filed within the original statute of limitations or six months after the nonsuit is ordered, whichever is later. Six months after the nonsuit, September 28, 2012, is later than the original statute of limitations date of April of 2011, making September 28, 2012, the expiration date that applies here. On September 26, 2012, Branch filed a second suit, and, on September 24, 2013, he moved to nonsuit the case, and the Court entered the controversial order of September 26, 2013, granting a second nonsuit (the Order).

Subsequent nonsuits are not a matter of right and are subject to certain restrictions. Va. Code § 8.01-380(B). Branch was quite right when he argued at the hearing that the Court has the discretion to grant or deny a second nonsuit, but a predicate to the Court's authority to exercise that discretion is that Branch give "reasonable notice to counsel of record for all defendants" or that he make "a reasonable attempt to notify any party not represented by counsel." *Id.* The latter is the relevant phrase here because there had been no service on the defendants, and no counsel had been notified. The defendants became parties to the case filed in 2012 the moment Branch filed the suit with their names in the caption of his complaint. *See* Va. Sup. Ct. Rule 3:5(c) ("[I]t will be understood that all defendants mentioned in the caption are made parties defendant. . . ."); *see* Petition, Sept. 26, 2012 (naming Hostetter, Baker, and AHC as defendants in the caption). Circuit Court file

number CL12001225-00. Therefore, prior to receiving an order of nonsuit and with it, an additional six months during which to file his claim, pursuant to § 8.01-229(E)(3), Branch was required to make a reasonable attempt to notify the named defendants. Hostetter and AHC allege, the record reflects, and Branch has not disputed, that they never received such notice prior to the Court's entering the Order. Moreover, there is nothing in the record to indicate that Branch made any attempt, reasonable or otherwise, to notify the unrepresented defendants.

I acknowledge that I erred by entering the Order. I exceeded the authority granted to the Court pursuant to § 8.01-380(B) to exercise the discretion to grant the nonsuit, because the exercise of that authority is predicated on proper notice or attempted notice to the other parties. Of greater consequence, I acknowledge that I exceeded the authority in granting Branch an additional six month extension. That is so because the tolling provision of § 8.01-229(E)(3) pertains only to those nonsuits as "prescribed in § 8.01-380." Va. Code § 8.01-229(E)(3), § 8.01-380(B). The Court cannot wield power any greater than that granted to it by the General Assembly, and the General Assembly has quite clearly demarcated the limits of that power in regard to subsequent nonsuits through the notice requirement of § 8.01-380. And yet, if the order is voidable only, I am also limited in my ability to correct this error. Rule 1:1 of the Supreme Court Rules prohibits me from vacating or modifying orders after twenty-one days. Va. Sup. Ct. R. 1:1. In the Order, I explicitly granted Branch the right to refile within six months. "Ordered that the above-captioned action be, and hereby is dismissed without prejudice by nonsuit as to all named Defendants remaining in the action, with Plaintiff Willard Shannon Branch *reserving the right to refile within six months.*" Order, 1–2, Sept. 26, 2013 (emphasis added). If the Order is voidable only, a finding now that Branch's nonsuit did not warrant a six month refiling extension under § 8.01-229(E)(3) would amount to a modification of the Order more than twenty-one days after I entered it. However, Rule 1:1 only applies to voidable orders. *Singh v. Mooney,* 261 Va. 48, 52 (2001). Orders that are void *ab initio* are not subject to this Rule and can be challenged at any time. *Id.*

An order is void *ab initio* if the court did not have jurisdiction over the parties or subject matter, "if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court could 'not lawfully adopt'." *Id.* This being a civil case with $2,000,000 in controversy, there is no question that the Court has subject matter jurisdiction. *See* Va. Code Ann. § 17.1-513; Petition, Mar. 21, 2014 at ¶ 14. In their pleas, AHC and Hostetter contend that the Court lacked personal jurisdiction over them when I entered the Order. AHC's Plea ¶ 8; Hostetter's Plea ¶ 12. They argue that the Court should find the Order void *ab initio* because Branch failed to serve them with process before it entered it, AHC's Plea ¶ 8; Hostetter's Plea ¶ 12, and the Court has

no personal jurisdiction over a defendant who has not been properly served. *See Dennis v. Jones,* 240 Va. 12, 19 (1990).

In *Dennis,* the dispositive question on appeal was "whether the judgment was void for failure to obtain personal jurisdiction over defendant." *Id.* at 14. Although the facts are not particularly important, the context of the case was that the plaintiff had made what could charitably be characterized as a lame attempt to serve the defendant, culminating in ineffective service through the Division of Motor Vehicles (the DMV). Having facially (though not factually) complied with the statute, the plaintiff then moved for and was awarded a default judgment. When the defendant discovered that judgment had been entered against her, she moved to set it aside. The Court concluded that "the attempt to serve defendant through the DMV was ineffective and personal jurisdiction was not obtained over her. Therefore, the default judgment was void. . . ." *Id.* at 19.

The conclusion that one might draw from the holding in *Dennis* is that any order entered affecting a defendant over whom the court has no personal jurisdiction would be void, but that likely is an overbroad conclusion. The more precise conclusion likely is that any order disposing of a case on the merits is void if the court does not have jurisdiction over the parties. In *Board of Supervisors v. Board of Zoning Appeals,* 271 Va. 336 (2006), the issue before the Court was the matter of the untimely filing of a notice of appeal and whether that was an issue of subject matter jurisdiction. Because the time frame for the filing of the notice of appeal did not affect the legislative grant of jurisdiction for the circuit court to hear an appeal from the decision of the Board of Zoning Appeals, the Court concluded that the issue was not one of subject matter jurisdiction which could be raised at any time, even for the first time on appeal. Still, in addressing prior decisions which turned on a determination of "jurisdiction" of a court to hear a case, the Court noted:

> In order for a court to have the power to adjudicate a particular case *upon the merits, i.e.,* to have "active jurisdiction," several elements are needed. Those elements are subject matter jurisdiction, which is the authority granted through the constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or, if the proceeding is *in rem,* seizure of a *res*; and "the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree."

*Id.* at 333-34 (emphasis added; internal citations and footnote omitted). In the case filed in 2012, the Court clearly had subject matter jurisdiction

and territorial jurisdiction, but not notice jurisdiction. Nevertheless, that concept, central to the case at bar, appears to be applicable only when a court is adjudicating a case on the merits, which a nonsuit order certainly does not do.

The distinction between notice as a jurisdictional matter for the disposition of a case on the merits and the issue of notice in other contexts is clearly illustrated in cases ending in nonsuits. There is no question that notice is not a jurisdictional matter for the entry of a nonsuit, and it has long been settled that it is not necessary to serve defendants before the entry of a first nonsuit order. *Janvier v. Arminio,* 272 Va. 353, 366 (2006) (citing *McManama v. Plunk,* 250 Va. 27, 34 (1995); *Clark v. Butler Aviation-Washington National, Inc.,* 238 Va. 506, 512, n. 5 (1989); *Berry v. F & S Financial Marketing, Inc.,* 271 Va. 329, 334 (2006)).

In *Janvier,* however, the Court extended that holding and found that no notice was required before taking a second nonsuit. *Id.* In reviewing the record, the Court made specific note of the holding and logic of the trial court. The trial court concluded that, while a first nonsuit is an absolute right, a second nonsuit, being only discretionary, requires that "all affected parties should be heard" before a court could exercise that discretion. The trial court reasoned that, "where a court is to exercise discretion, it must have the benefit of hearing from all persons affected thereby" and concluded that, when requesting a second nonsuit, "the plaintiff must notice all defendants affected by such nonsuit regardless of whether they have been served with process." In its dispositive order, the trial court sustained the defendant's plea in bar of the statute of limitations, ruling that the second nonsuit order was void and, thus, the third motion for judgment was not timely filed as it was not filed within six months of the entry of the first nonsuit order.

Faced with an unequivocal and well-reasoned decision by the trial court that the lack of notice rendered its order of nonsuit void, the Supreme Court of Virginia reversed, holding that the order was merely voidable. Its reasoning is particularly instructive for this Court in addressing the case at bar. The Supreme Court of Virginia clearly stated that it reached its conclusion because, "[i]n the absence of a requirement of notice . . . under [former] Code § 8.01–380(B), the trial judge could properly exercise discretion to grant the second nonsuit." *Id.* at 367. This strongly suggests (perhaps necessarily implies) that, had there been a notice requirement, like the one added in 2007, the trial court could not have "properly exercise[d] discretion," and the order would have been void *ab initio.* That is so because the absence of notice (not required in *Janvier* but now required under the amended statute) would strip the trial judge of discretion to grant the second nonsuit in a case in which notice was required.

Of course, as AHC and Hostetter rightly point out, the Supreme Court of Virginia decided *Janvier* prior to 2007, when the General Assembly amended § 8.01-380(B) to include a notice requirement. As part of its decision, the

Court in *Janvier* was as direct in a suggestion to the General Assembly as I have ever seen it be. However, not long after, the Supreme Court of Virginia sent a similar signal, in *Hicks v. Mellis,* 275 Va. 313 (2008), on a similar issue, that time involving Va. Code Ann. § 8.01-335(B). "Finally, we are aware that, because Dr. Mellis was not served in the nonsuited action, and had no other notice of those proceedings, he did not know that the May 25, 2004, order of nonsuit had been entered and could have been appealed. This problem, however, cannot be considered in this collateral action but may raise a question for the General Assembly's consideration in future revisions to Code § 8.01-335(B)." *Id.* at 221. Recognizing a fundamental inequity in permitting one party to extend the statute of limitations without notice to the defendant by the simple expedient of filing and then nonsuiting cases, the Court preliminarily stated:

> [F]or reasons that will also become apparent, we take this opportunity initially to observe that the prospect of similar cases in the future resulting from a series of nonsuits is not speculative. Both future plaintiffs and defendants might well benefit should the General Assembly amend Code § 8.01-380 by providing a requirement for notice or the exercise of due diligence to give notice to a defendant when a plaintiff seeks a second or subsequent nonsuit.

*Id.* at 357. As I suggested above, the obvious implication from the observation is that, had there been a notice requirement, the result of the case would have been different. It seems clear to me that the Court was not enthusiastic about its holding in *Janvier* and that it properly made its decision because that is what the statutory law mandated, but that, had there been a provision for notice such as the one it telegraphed to the General Assembly, its holding would have been different. Fewer than six months later, on March 15, 2007, clearly in response to that observation in the *Janvier* decision of September 26, 2006, the General Assembly amended the statute to permit a trial court to "allow additional nonsuits upon reasonable notice to counsel of record for all defendants and upon a reasonable attempt to notify any party not represented by counsel." That statutory language, although not identical to the language suggested by the Court in *Janvier,* is very close. The phrases "[n]otice or the exercise of due diligence to give notice" and "notice to counsel . . . and . . . a reasonable attempt to notify [unrepresented parties]" are distinguishable only in the choice of words, not in the impact of the requirement. AHC and Hostetter argue that, reading *Janvier* in light of the amended § 8.01-380 creates a personal jurisdiction requirement, but they are off the mark. Nevertheless, *Janvier* does suggest that an order for a second nonsuit without notice is void *ab initio* for a different reason. Notice, not personal jurisdiction, was the focus of the case, and the lack of notice implicated the fourth (and less well defined) basis for finding an

order void *ab initio,* that is "the other conditions of fact [which] must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree," *Board of Supervisors,* 271 Va. at 334, or "because the character of the judgment was not such as the court had the power to render because the mode of procedure employed by the court was such as it might not lawfully adopt." *Singh v. Mooney,* 261 Va. 48, 52 (2001).

In *Janvier,* the Court narrowly framed the dispositive issue to be "whether the trial court correctly determined that, in the absence of notice being given to a party who had not yet been served with the underlying action and whose rights potentially would be affected thereby, an order granting a second nonsuit pursuant to Code § 8.01-380 is void *ab initio.*" *Id.* at 364-65. It then announced the controlling principle for its resolution:

> *This issue is ultimately resolved by whether, as the trial court found, in the absence of such notice to that party and an opportunity to be heard, a trial court would lack jurisdiction to enter a second nonsuit "because the character of the judgment was not such as the court had the power to render because the mode of procedure employed by the court was such as it might not lawfully adopt."* "The lack of jurisdiction to enter an order under [such] circumstances renders the order a complete nullity and it may be 'impeached directly or collaterally by all persons, anywhere, at any time, or in any manner'." *Singh,* 261 Va. at 52, 541 S.E.2d at 551 (quoting *Barnes v. American Fertilizer Co.,* 144 Va. 692, 705, 130 S.E. 902, 906 (1925)).

*Id.* at 366 (emphasis added; citations omitted). The Court noted that, in *McManama v. Plunk,* it had reversed a trial court's decision "when it ruled that the plaintiff could not seek a [first] nonsuit unless the defendant had 'been served with process, [and was] before a court with jurisdiction over the defendant's person, and [had] been given notice of hearing and an opportunity to be heard'." *McManama,* 250 Va. at 32. The basis for that holding was that "a trial court may not place limitations on the absolute right of the plaintiff to seek the nonsuit beyond those found in the statute." *Janvier,* 272 Va. at 366. The conclusion in *Janvier* was premised on (a) the Court's observation that "nothing in the language of Code § 8.01-380(B) suggests that the General Assembly intended to place any additional restriction on the granting of a second nonsuit other than to leave the matter to the trial court's discretion or the concurrence of the parties" and (b) the Court's deference to the separation of powers, the consequence of which was that it had no authority to "impose on a plaintiff seeking a second nonsuit procedural 'requirements [not] found in the applicable statutes . . . by judicial fiat'." *Id.*

The question then becomes whether the statute's new notice provision left the Court any discretion to enter or decline to enter the Order without Branch's making any attempt at notice, which would make my decision to enter the Order voidable. If the notice provision instead contained no allowances for court discretion, or if the notice provision was a predicate to the Court's exercise of discretion, then I lacked the power to enter the Order, making it void *ab initio*.

The difference between these non-jurisdictional errors which are void *ab initio* and errors which are merely voidable ones is not exactly stark. A decision is voidable when it contains a reversible error made by the trial court. *Id.* "A challenge to an order based on a trial court's misapplication of a statute generally raises a question of court error, not a question of the court's jurisdiction." *Hicks v. Mellis,* 275 Va. 213, 219 (2008).

Other cases that found that failure to adhere to a notice requirement was a voidable error also contained some measure of discretion in their respective statutes. *See Singh,* 261 Va. at 52 ("Compliance with this rule . . . may be modified or dispensed with by the court in its discretion." (quoting Va. Sup. Ct. R. 1:13); *Illen v. Richards,* 221 Va. 644, 648 (1980) (applying Rule 1:13).

In *Hicks v. Mellis,* 275 Va. 213 (2008), Hicks filed a motion for judgment and then nonsuited it. He timely filed a second motion for judgment but did not serve any of the defendants, and it lay dormant for more than three years. As a consequence, the trial court entered an order pursuant to Va. Code Ann. § 8.01-335(B), striking it from the docket. Hicks then timely filed a motion to reinstate, the court permitted it, and then Hicks filed a motion for a nonsuit, which the court entered. On the same day, Hicks filed a third motion for judgment only against Mellis. The court then concluded that the motion to reinstate had been improvidently granted, with the results that the second nonsuit order was of no effect and that the third motion for judgment was barred by the statute of limitations. The rationale for the trial court's decision was the language of the final sentence of the statute: "Any case discontinued or dismissed under the provisions of this subsection may be reinstated, on motion, after notice to the parties in interest, if known, or their counsel of record within one year from the date of such order but not after."

There was no dispute that Mellis was a party to the action, there was no dispute that Hicks had not given him notice, so the court focused "on the question whether the absence of notice to Dr. Mellis rendered the court's reinstatement order void *ab initio* and subject to collateral attack in the present malpractice action." *Id.* at 219. Concluding that the trial court had only misapplied the statute, the Supreme Court of Virginia held that the order of reinstatement was only voidable, not void, because:

> the statute permits a circuit court to enter a reinstatement
> order without prior notice to anyone when the circuit court

has determined that there are no known interested parties or counsel of record. *See* Code § 8.01-335(B). Thus, prior notice is not a jurisdictional requirement for entry of a reinstatement order under the statute.

Instead, Code § 8.01-335(B) provides that a circuit court may reinstate a discontinued action after notice to "the parties in interest, if known, or their counsel of record." *Id.* Significantly, the statute does not direct that notice be given only to named defendants or their counsel of record, but leaves for the circuit court's determination the issue whether there are known parties who have an interest in the litigation.

*Id.* at 220. The court went further in finding that the order was voidable only.

Likewise, the circuit court's reinstatement order was not void *ab initio* on the ground that the court employed an unlawful mode of procedure. *See Collins*, 274 Va. at 402-03, 649 S.E.2d at 678; *Evans*, 255 Va. at 73, 495 S.E.2d at 828. Code § 8.01-335(B) required that the circuit court decide whether there were known interested parties entitled to notice before reinstating the case and, thus, the circuit court lawfully could have made this determination and still have reached the wrong result. Because the misapplication of the statute in the present case occurred in the circuit court's lawful exercise of its jurisdiction, the reinstatement order was merely voidable, rather than void *ab initio* and, thus, was not subject to collateral attack in the present action.

*Id.* In *Hicks*, the trial court had discretion in determining whether there were parties who were entitled to notice; the Supreme Court did not address whether or not the trial court would have any discretion regarding notice if it had concluded that there had been such parties. Moreover, the Court noted that, "as our holding in *Janvier* illustrates, a collateral challenge to an order must be resolved based on a determination whether the issuing court had jurisdiction to enter the order in question, not whether the court erred or abused its discretion in entering the order." *Id.* at 221. Recall that the jurisdictional predicate to which the Court in *Janvier* referred was not subject matter, not territorial, and not notice, but whether "the character of the judgment was not such as the court had the power to render because the mode of procedure employed by the court was such as it might not lawfully adopt." *Janvier*, 277 Va. at 366.

As I have noted, the amended statute, § 8.01-380(B), provides, in simple language, that the Court "may allow additional nonsuits upon reasonable notice to counsel of record for all defendants and upon a reasonable attempt

to notify any party not represented by counsel." Unlike the trial court in *Hicks,* the Court has no discretion to determine whether or not there are "counsel for all defendants" or whether there are parties "not represented by counsel." Those facts are a part of the record and are indisputable. Some issues of jurisdiction are also not in question. The Court has subject matter jurisdiction; it has territorial jurisdiction; and because the issue is a nonsuit, the issue of notice would not be a question of jurisdiction except for the fact that the General Assembly has made it so. Had Branch attempted the required notice, the Court would have had discretion whether or not to enter the order. His failure to do so, however, prevented the Court from obtaining that discretionary authority.

Rephrasing language from *Janvier,* this issue is ultimately resolved by answering the question whether, given the notice requirement contained in § 8.01-380(B) and given Branch's failure to comply with it, did the Court lack jurisdiction to enter the Order "because the character of the judgment was not such as the court had the power to render because the mode of procedure employed by the court was such as it might not lawfully adopt." I conclude that the Court had no jurisdiction to enter the Order, and, consistent with *Singh,* that the lack of jurisdiction to enter the Order "renders [it] a complete nullity and it may be 'impeached directly or collaterally by all persons, anywhere, at any time, or in any manner'." *Singh,* 261 Va. at 52.

On a more technical basis, but one no less persuasive, I further note that the statute requires that "[a]ny order effecting a subsequent nonsuit shall reflect all prior nonsuits and shall include language that reflects the date of any previous nonsuit together with the court in which any previous nonsuit was taken." A review of the Order clearly shows that it did not follow this non-discretionary procedural requirement; it does not contain a single reference to the prior nonsuit, much less its date or the court where it was taken. *See* Order. An order that undeniably was not made in accordance with § 8.01-380(B) cannot grant the nonsuiting party a six month statute of limitations extension under § 8.01-229(E)(3) when that statute only grants extensions to nonsuits suffered "as prescribed in § 8.01-380."

Because the Order, not entered as prescribed by § 8.01-380, was void *ab initio,* it could no more toll the statute of limitations than it could effectively nonsuit the 2012 case. A foundational case on void *ab initio* rulings offers a helpful illustration of the central issue of this case:

> The circuit courts of the state have jurisdiction to enforce the collection of debts according to an established procedure. A. holds the bond of B. for $1,000, due and unpaid. He goes into a circuit court with the bond in his hand, and, without writ issued, or any pleadings, asks the court to award a rule against B. to show cause why judgment should not be rendered against him for the debt and interest. The rule is accordingly awarded, executed, and returned, and judgment thereupon rendered for

the debt, interest, and costs. Such a judgment would be void, notwithstanding the court has jurisdiction of the subject and of the parties. Why void? Because, in the language of Mr. Justice Field, "the court is not authorized to exert its power in that way."

*Anthony v. Kasey*, 83 Va. 338, 338 (1887). The situation before me is much the same. The Court has subject matter jurisdiction, and it has territorial jurisdiction. Because the parties have never been served and the issue is one of nonsuit, notice jurisdiction is not at issue except to the extent that it triggers the fourth predicate for the Court's exercise of active jurisdiction. Although the Court does not need personal jurisdiction over the defendants to enter a nonsuit, the failure of statutory notice stripped the Court of jurisdiction to exercise its discretion to enter the Order because "the character of the judgment was not such as the court had the power to render because the mode of procedure employed by the court was such as it might not lawfully adopt." *Janvier*, 277 Va. at 366.

Though entering the Order contrary to the requirements of the statute was an unfortunate, regrettable error — and one, I may point out, Branch played no small part in helping to commit — Branch cannot flout the statute's requirements and then rely on this Court's error to change the law. I cannot exert power greater than that allowed by law no matter how much time has elapsed since the error has been committed.

The nonsuit order of September 26, 2013, is void. September 28, 2012, was, therefore, the last day Branch could have brought a suit for this cause of action, rendering this present case, initiated March 21, 2014, time barred. Branch did initiate the 2012 case within the appropriate time window, but he failed to make any attempt to serve any of the defendants with process prior to September 26, 2013. Only Hostetter has raised that issue, and I have disposed of his plea in this letter.

I note that the case designated CL12001225-00 is still pending because it was ineffectively nonsuited (and I will prepare an order reflecting that), but it may be a cause gone with the wind because there has been no effort to serve any of the defendants since the date it was filed on September 26, 2012. As Miss Scarlett said, however, "I'll think about that tomorrow."